STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

Daniel ANDERSON, Defendant-Appellant.

Supreme Court

*Nos. 96–0087–CR, 96–0088–CR. Oral argument May 27, 1998.—Decided July 2, 1998.*

(Also reported in 580 N.W.2d 329.)

For the plaintiff-respondent-petitioner the cause was argued by *Susan M. Crawford*, assistant attorney general, with whom on the brief was *James E. Doyle*, attorney general.

For the defendant-appellant there was a brief and oral argument by *Jack E. Schairer*, assistant state public defender.

¶ 1.   WILLIAM A. BABLITCH, J.   The State of Wisconsin (State) seeks review of a decision of the court of appeals[1] which reversed convictions of Daniel Anderson (Anderson) for two counts of bail jumping, each count based on a violation of a separate condition of the same bond. Because we determine that the violations of the different conditions of bond are different in fact and there is no clear indication to rebut the presumption that the legislature intended multiple punishments, we hold that the two convictions are not multiplicitous. Accordingly, we reverse the decision of the court of appeals.

¶ 2.   The facts relevant to this appeal are undisputed. The defendant, Anderson, was charged with substantial battery, a felony contrary to Wis. Stat.

---

[1] *State v. Anderson*, 214 Wis. 2d 126, 570 N.W.2d 872 (Ct. App. 1997).

742

§ 940.19(2) (1993–94).[2] At Anderson's initial appearance, the court commissioner set a cash bond, ordered statutory conditions of bond,[3] and ordered as another condition of bond that Anderson have no contact with the victim, K. Lain (Lain). Following the preliminary hearing, the court commissioner reduced the cash bond but added, as another condition of bond, that Anderson not consume alcoholic beverages or illegal drugs.

¶ 3.   At a pretrial hearing on May 11, 1995, before Kenosha County Circuit Court, David M. Bastianelli, Judge, the defendant pleaded no contest to the charge of substantial battery. Based on the plea, the court found the defendant guilty, entered judgment of conviction accordingly, and ordered a presentence investigation report. The court also released Anderson on the same bond pending sentencing.

¶ 4.   While Anderson was still under bond and before sentencing on the battery conviction, City of Kenosha police officers were called to the victim's home. Upon arrival, they found the victim, the defendant, and another individual, R. Powell (Powell), all of whom were intoxicated. All three individuals told the officers that they were currently residing at the vic-

---

[2] All references to Wisconsin Statutes are to the 1993–94 version unless otherwise noted.

[3] Statutory conditions of bond include the following: Wis. Stat. § 940.49 providing that the defendant shall neither directly nor indirectly threaten, harass, intimidate or otherwise interfere with victims or witnesses in the action; Wis. Stat. § 969.03(2) providing that the defendant shall not commit any crimes or engage in any criminal activity; Wis. Stat. § 969.09(1) providing that the defendant shall appear in court as ordered; and Wis. Stat. § 969.10 providing that the defendant shall give written notice to the clerk of court within 48 hours of any change of address or telephone number.

tim's address. Also, there had apparently been an altercation between Powell and Anderson—both had lacerations and were bleeding.

¶ 5. As a result of this incident, Anderson was charged by criminal complaint with five counts: one count of battery, one count of disorderly conduct and three counts of bail jumping, all by a repeat offender. Each count of bail jumping was based on a violation of a different term[4] of Anderson's bond for the underlying substantial battery charge. Pursuant to a plea agreement, Anderson pleaded guilty to two charges of bail jumping, contrary to Wis. Stat. § 946.49 (reprinted below),[5] one based on violating the term of bond prohibiting consumption of alcohol, and one based on violating the term of bond prohibiting contact with Lain. The circuit court consolidated the bail jumping charges with the underlying substantial battery charge. The circuit court sentenced Anderson to seven years in the Wisconsin state prisons on one count of bail jumping and a withheld sentence and six years of probation with conditions, consecutive to the prison term on the other bail jumping count. The circuit court also ordered a withheld sentence and three years of probation for the underlying substantial battery con-

---

[4] We use the phrases "conditions of bail" and "terms of bail" interchangeably throughout the opinion. The phrases are synonymous.

[5] Wisconsin Stat. § 946.49 provides in pertinent part:

**Bail jumping. (1)**   Whoever, having been released from custody under ch. 969, intentionally fails to comply with the terms of his or her bond is:

(a)   If the offense with which the person is charged is a misdemeanor, guilty of a Class A misdemeanor.

(b)   If the offense with which the person is charge is a felony, guilty of a Class D felony.

viction, to run consecutive to the prison term and concurrent with the probation in the bail jumping case.

¶ 6. Anderson filed a motion for post-conviction relief, arguing that convictions on two counts of bail jumping were multiplicitous and, therefore, violated the double jeopardy provisions of the United States and Wisconsin constitutions.[6] The circuit court denied Anderson's motion.

¶ 7. The court of appeals reversed the defendant's conviction on one count of bail jumping and remanded for re-sentencing on the other count. *See State v. Anderson*, 214 Wis. 2d 126, 570 N.W.2d 872 (Ct. App. 1997). The court of appeals concluded that violating the terms of bond is determinative and Anderson violated the terms once, at the same time and at the same place. *See id.* at 132. Therefore, the court of appeals concluded that the two convictions for violating one bail bond were multiplicitous. *See id.*

¶ 8. We accepted the State's petition for review and are presented with one issue: whether the defendant's convictions for two counts of bail jumping were multiplicitous, thus violating the constitutional protection against double jeopardy, where each count was based on a violation of a separate term of the same bond. We hold that charging this defendant with multiple counts of bail jumping for violating separate terms of the same bond is not multiplicitous. Accordingly, we reverse the court of appeals' decision.

---

[6] U.S. Const. amend. V provides in pertinent part: "No person shall. . .be subject for the same offence to be twice put in jeopardy of life or limb. . . ."

Wis. Const. art. I, § 8 provides in pertinent part: "[N]o person for the same offense may be put twice in jeopardy of punishment. . . ."

¶ 9. Whether an individual's constitutional right to be free from double jeopardy has been violated is a question of law that this court reviews de novo. *See State v. Sauceda,* 168 Wis. 2d 486, 492, 485 N.W.2d 1 (1992).

¶ 10. Both the state and federal constitutions protect a defendant from being punished twice for the same offense.[7] One of the protections embodied in the double jeopardy clause, and the one pertinent to this case, is "protection against multiple punishments for the same offense." *Sauceda,* 168 Wis. 2d at 492 (citing *North Carolina v. Pearce,* 395 U.S. 711, 717 (1969)). Multiplicitous charges, that is charging a single criminal offense in more than one count, "are impermissible because they violate the double jeopardy provisions of the Wisconsin and United States Constitutions." *State v. Grayson,* 172 Wis. 2d 156, 159, 493 N.W.2d 23 (1992) (citations omitted).

¶ 11. It is well-established that this court analyzes claims of multiplicity using a two-prong test: 1) whether the charged offenses are identical in law and fact; and 2) if the offenses are not identical in law and fact, whether the legislature intended the multiple offenses to be brought as a single count. *See id.* We most recently applied this test in *State v. Lechner,* 217 Wis. 2d 392, 576 N.W.2d 912 (1998).

---

[7] The double jeopardy clauses of the federal and state constitutions are the same in scope and purpose. *See Day v. State,* 76 Wis. 2d 588, 591, 251 N.W.2d 811 (1977). Therefore, this court has accepted decisions of the United States Supreme Court as controlling the double jeopardy provisions of both constitutions. *See id.*

¶ 12.   Under the first prong of the multiplicity analysis, if the offenses are identical in law and fact, the charges are multiplicitous in violation of the double jeopardy clauses of the federal and state constitutions. *See Grayson,* 172 Wis. 2d at 159. The analysis under this first prong is the same whether we are reviewing multiple charges brought under different statutory sections (a "lesser-included offense" challenge), or multiple charges brought under one statutory section (a "continuous offense" challenge). *See id.* at 159–60 (referring to *Sauceda,* 168 Wis. 2d at 493 n.8). However, our focus changes with respect to the particular challenge raised.

> In a "lesser-included offense" challenge, the factual situations underlying the offenses are the same, so our focus is on whether the offenses are also identical in law. *See [Sauceda,* 168 Wis. 2d] at 493–94 n.8, 485 N.W.2d 1; *see, e.g., State v. Kuntz,* 160 Wis. 2d 722, 753–57, 467 N.W.2d 531 (1991); *State v. Wolske,* 143 Wis. 2d 175, 180–185, 420 N.W.2d 60 (Ct. App. 1988). In a "continuous offense" challenge, the course of conduct is alleged to have constituted multiple violations of the same statutory provision, so our focus is not on statutory definitions but on the facts of a given defendant's criminal activity. *See Sauceda,* 168 Wis. 2d at 493–94 n.8, 485 N.W.2d 1; *see, e.g., State v. Rabe,* 96 Wis. 2d 48, 65–68, 291 N.W.2d 809 (1980); *State v. Van Meter,* 72 Wis. 2d 754, 758, 242 N.W.2d 206 (1976).

*Lechner,* 217 Wis. 2d at 403 n.7.

¶ 13.   In this case, the State concedes that the two bail jumping charges are identical in law because both were contrary to the same statute, Wis. Stat. § 946.49.

¶ 14. The parties disagree, however, on whether the offenses are different in fact. Because the defendant's course of conduct allegedly constituted multiple violations of the same statute, Wis. Stat. § 946.49, we focus on the facts of the defendant's offenses. *See Sauceda*, 168 Wis. 2d at 493–94 n.8. Anderson asserts that the offenses are identical in fact because the violations happened at the same time, on the same date and at the same place. He argues that both offenses were part of the same general transgression or same episode. The State, on the other hand, asserts that the two bail jumping charges are, in all likelihood, separated in time and that the charges are significantly different in nature because each charge involves independent deliberation and a different course of conduct on Anderson's part.

¶ 15. Because the defendant pleaded guilty to two counts of bail jumping as part of a plea agreement, there is no evidentiary record on which to base our review. Therefore, we rely on the criminal complaint and information, as well as statements made at the pretrial hearing to determine whether the offenses were identical in fact. *See, e.g., State v. Eisch*, 96 Wis. 2d 25, 27, 291 N.W.2d 800 (1980) (reviewing case at pleading stage).

¶ 16. One count of the complaint alleged that Anderson intentionally failed to comply with the term of his bond that prohibited him from consuming any alcoholic beverages during the pendency of the action regarding the substantial battery charge. Another count alleged that Anderson intentionally failed to comply with the term of his bond that prohibited him from having any contact with Lain. As a basis for the complaint, the complainant stated that two City of Kenosha police officers were dispatched to an apart-

ment located on Sheridan Road in Kenosha. When they arrived at the apartment, the officers were met by three occupants—Anderson, Lain and Powell. The officers observed that all three individuals were extremely intoxicated, and both Anderson and Powell had lacerations and were bleeding. All three individuals stated that they were currently residing at this apartment on Sheridan Road.

¶ 17.   At the plea/sentencing hearing, the circuit court narrated the contents of the complaint to Anderson stating that on June 11, 1995, when the police arrived at the apartment on Sheridan Road at 5:49 p.m., they observed that Anderson had consumed alcohol and that he had contact with Lain. The court stated that the complaint alleged that Anderson violated the conditions of his bond, once by consuming alcohol and again, by having contact with Lain.

¶ 18.   Based on the record, we conclude that the count of bail jumping for consuming alcohol and the count of bail jumping for contact with Lain are not identical in fact. Charged offenses are not multiplicitous if the facts are either separated in time or of a significantly different nature. *See Eisch,* 96 Wis. 2d at 31. "[T]he appropriate question is whether these acts allegedly committed. . .are so significantly different in fact that they may properly be denominated separate crimes although each would furnish a factual underpinning or a substitute legal element for the violation of the same statute." *Id.* at 34.

¶ 19.   At first blush, the two counts of bail jumping do not appear to be separated in time. On June 11, 1995 at 5:49 p.m., the officers arrived at the apartment located on Sheridan Road to find Anderson intoxicated and in contact with Lain. However, all three individuals at the apartment told the officers that they resided

at the apartment. We agree with the State that this suggests that Anderson resumed contact with Lain at some time before June 11, 1995, when he consumed alcohol.

¶ 20.  Even if the offenses are not separated in time, they are nonetheless different in fact because they are significantly different in nature. The test is whether each count requires proof of an additional fact that the other count does not. *See State v. Rabe,* 96 Wis. 2d 48, 64, 291 N.W.2d 809 (1980). The offenses are significantly different in nature if each requires "a new volitional departure in the defendant's course of conduct." *Eisch,* 96 Wis. 2d at 36. The defendant's " 'successive intentions make him [or her] subject to cumulative punishment, and he [or she] must be treated as accepting that risk. . . .' " *Id.* (quoting *Irby v. United States,* 390 F.2d 432, 435 (D.C. Cir. 1967)).

¶ 21.  In *Rabe,* the court upheld the defendant's convictions of four counts of homicide by intoxicated use of a vehicle which resulted from a single act of negligently operating a motor vehicle while under the influence of an intoxicant. *See Rabe,* 96 Wis. 2d at 53. In determining whether the charges were multiplicitous, the court stated that in this type of "continuous offense case," the issue turns on whether there is a sufficient break in the conduct and time between the acts to constitute separate and distinct criminal acts. *See id.* at 65–66. In *Rabe,* the State conceded that the single negligent act took place at a single time and at a single place. *See id.* at 66. However, each charge involved a different victim and not all the victims were in the same car. *See id.* "Each count requires proof of additional facts that the other counts do not—namely, the death of the particular victim named in each count and the causal relationship between the defendant's

negligent operation of his vehicle while intoxicated and that particular death." *Id.* The court concluded that the charges were not multiplicitous and therefore upheld the convictions.

¶ 22. Similarly, in the present case, the underlying facts of the two counts of bail jumping—consuming alcohol for one count and having contact with Lain for the other count—are significantly different. Each count requires proof of additional facts that the other count does not. Each offense requires a different and new volitional act on the defendant's part. Consuming alcohol is separate and distinct from having contact with the victim. Based on the record, we conclude that the count of bail jumping based on Anderson's consuming alcohol and the count of bail jumping based on his contact with Lain are different in fact. Accordingly, the two charges are not violative of the double jeopardy provisions of the federal and state constitutions.

¶ 23. That conclusion, however, does not end our analysis. Turning to the second prong of the multiplicity analysis, the charges may be multiplicitous if the legislature intended that the multiple offenses, which are different in fact, be brought as a single count. *See Grayson*, 172 Wis. 2d at 159. Because we have determined that the bail jumping offenses charged are different in fact, in discerning legislative intent we begin with the presumption that the legislature intended multiple punishments. *See id.* at 160. This presumption may only be rebutted by a clear indication to the contrary. *See Missouri v. Hunter*, 459 U.S. 359, 367 (1983). We use four factors to determine legislative intent in a multiplicity analysis: 1) statutory language; 2) legislative history and context; 3) the nature of the proscribed conduct; and 4) the appropriateness of mul-

751

tiple punishment. *See Grayson*, 172 Wis. 2d at 160 (citing *State v. Tappa*, 127 Wis. 2d 155, 165, 378 N.W.2d 883 (1985)). We determine the legislature's intent relying on a " 'common sense reading of the statute' that will give effect to 'the object of the legislature' and produce a result that is 'reasonable and fair to offenders and society.' " *Grayson*, 172 Wis. 2d at 162 (citing *Manson v. State*, 101 Wis. 2d 413, 428, 304 N.W.2d 729 (1981)). If we determine that the legislature intended that the charges be brought as a single count, the charges are multiplicitous and impermissible, not as violating double jeopardy but as violating the will of the legislature. *See Grayson*, 172 Wis. 2d at 159 n.3.

¶ 24. The specific language of Wis. Stat. § 946.49 provides that "[w]hoever, having been released from custody under ch. 969, intentionally fails to comply with the terms of his or her bond is . . ." guilty of a Class A misdemeanor if the underlying charge is a misdemeanor or guilty of a Class D felony if the underlying charge is a felony. The defendant points to the fact that the legislature uses the plural, "terms," rather than the singular, "term," of bond. The defendant argues that Anderson violated the terms of bond once and therefore, multiple convictions are multiplicitous. The court of appeals agreed, relying on Wis. Stat. § 990.001(1) which provides that in statutory construction, "[t]he singular includes the plural, and the plural includes the singular."

¶ 25. In the plain language of Wis. Stat. § 946.49, the legislature did not expressly provide a unit of prosecution for violations of multiple terms of bond. Regarding the use of the plural of "terms," we disagree with the heavy reliance on this plural to discern legislative intent. Even under the court of appeals' reliance

on Wis. Stat. § 990.001(1) that in statutory interpretation the plural includes the singular, § 946.49 could be understood to mean that the legislature intended to impose one charge of bail jumping for each violation of each term of bond. However, the statute could also be read to mean that the legislature intended to impose one charge of bail jumping for a violation of any of the terms of bond regardless of how many terms are violated. Based on the plain language of the statute, reasonable people could disagree regarding its meaning; therefore, we turn to the next factor, legislative history and context, to discern the legislative intent.

¶ 26. Wisconsin Stat. § 946.49 was first enacted in ch. 255, Laws of 1969, a major overhaul of the criminal procedure code. The Prefatory Note to the act provides that the bail jumping statute was enacted to coincide with the amendments to Wis. Stat. ch. 969, providing for more flexible bail provisions. The act "creates the crime of bail jumping so that. . .a person who violates the conditions of his bond may also be prosecuted criminally. The punishments are in accordance with the severity of the crime for which he was originally charged." Prefatory Note, ch. 255, Laws of 1969. The statute as enacted was substantially the same as it is today, using the word "terms" and providing a lesser penalty for bail jumping if the defendant is charged with a misdemeanor and a higher penalty for bail jumping if the defendant is charged with a felony.

¶ 27. The bail jumping statute essentially put teeth into a court's ability to set conditions of bail. Viewed in the context of the entire statutory scheme, bail and the bail jumping statute serve a variety of legislative interests. "Conditions of release. . .may be imposed for the purpose of protecting members of the

community from serious bodily harm or preventing intimidation of witnesses." Wis. Stat. § 969.01(4).

¶ 28. When the legislature enacted ch. 183, Laws of 1981, amending Wis. Stat. ch. 969 relating to bail and other conditions of release, it did not modify Wis. Stat. § 946.49 regarding bail jumping. "[Chapter] 183 codifies and expands upon the general constitutional requirements that release conditions must be *reasonable* and *designed* to assure the court appearance of a particular individual, protect members of the community from this person or prevent witness intimidation by this person." Shaun Haas, *Law Implementing the Constitutional Bail Amendment (Chapter 183, Laws of 1981)*, Wisconsin Legislative Council Staff, Information Memorandum 82–8, April 29, 1982, at 6.

¶ 29. In sum, the legislature sought to give circuit courts flexibility in setting the terms of bail to achieve three general interests: protecting the community, protecting the victim, and protecting the judicial system. *See, e.g., id.* at 4–6. Conditions of release imposed by a court serve to address these different interests. The bail jumping statute, enacted to coincide with the greater flexibility in setting conditions of bail, provides courts with an enforcement mechanism and provides a deterrent for defendants.

¶ 30. The conditions of bail set in this case are a good example of the different interests that the legislature intended to protect. A condition to not consume alcoholic beverages is usually aimed at protecting the public. A violation of this condition presents harm to the members of the community, as evidenced in this case by the altercation between Anderson and Powell. A condition to have no contact with a particular person is aimed at protecting that individual and serves the

judicial system by preventing the defendant from intimidating that individual as a potential witness.

¶ 31. Legislative history and the context of the bail jumping statute indicate that the legislature intended to protect different interests. The statutorily required terms of bail (Wis. Stat. §§ 940.49, 969.03(2), 969.09(1), and 969.10), as well as judicially imposed conditions designed to meet the particular circumstances of the defendant, are all aimed at protecting these different interests recognized by the legislature. Given the context of the bail scheme in its entirety, we cannot perceive of any clear indication by the legislature to overcome the presumption of separate punishments for violations of different conditions of bail.

¶ 32. We now turn to the third factor in determining whether the legislature intended cumulative punishments under Wis. Stat. § 946.49: the nature of the proscribed conduct. Multiple punishments are permissible if the nature of the offenses is separate in time and significantly different in nature. *See Grayson*, 172 Wis. 2d at 165 (citing *Eisch*, 96 Wis. 2d at 31). The court in *Grayson* determined that the offenses were significantly different in nature because the defendant formed a new *mens rea* for each offense. *See Grayson*, 172 Wis. 2d at 165. Each offense required a separate volitional act. *See Tappa*, 127 Wis. 2d at 169. Each offense caused harm that the other offense did not. *See id.* at 170.

¶ 33. As discussed above in regard to the first prong of the multiplicity test, the act of drinking and the act of having contact with the victim each requires a separate volitional act. In addition, each act presents harm that the other act does not. Drinking presents

harm to the community, and contact with the victim presents harm to the victim and the judicial system because of the possible intimidation of the victim as a witness. Because the nature of the different proscribed conduct causes separate harms, we perceive no clear indication under this factor of the analysis to overcome the presumption that the legislature intended cumulative punishments.

¶ 34. We turn to the fourth factor: the appropriateness of multiple punishments. Given the different interests meant to be protected by the legislature, we conclude that separate punishments for violations of different conditions of bond is appropriate. Each of the conditions of bond serves to protect a different interest.

¶ 35. Multiple punishments are appropriate for each bail violation because of the deterrent effect on defendants to not violate the terms of bail. *See, e.g., Grayson*, 172 Wis. 2d at 166 (multiple punishments provide deterrent effect). Because the bail jumping statute was enacted to coincide with the greater flexibility given to circuit courts in setting conditions of bail, the bail jumping statute is generally meant to provide a deterrent to defendants from violating bail. Without imposing multiple punishments for violating the different terms of bail, a defendant may even be encouraged to violate multiple terms, knowing that the punishment will be no different whether he or she violates one or all terms of bail. It is difficult to believe that the legislature intended this result.

¶ 36. Based on our analysis of the four factors—statutory language, legislative history and context, the nature of the proscribed conduct, and the appropriateness of multiple punishments—we conclude that there is no clear indication to overcome the

presumption that the legislature intended multiple punishments for violations of different conditions of the same bond. Accordingly, the two offenses are not multiplicitous.

¶ 37. In sum, we hold that charging this defendant with multiple counts of bail jumping for violating separate terms of the same bond is not multiplicitous. The two counts of bail jumping are not identical in fact because they are significantly different in nature. Accordingly, charging two counts of bail jumping does not violate the double jeopardy provisions of the federal or state constitutions. We also conclude that the two offenses are not multiplicitous because there is no clear indication to rebut the presumption that the legislature intended multiple punishments for these factually different offenses of the same bond. Accordingly, we reverse the decision of the court of appeals and uphold the circuit court's entry of judgment for two convictions of bail jumping.

*By the Court.*—The decision of the court of appeals is reversed.

¶ 38. JANINE P. GESKE, J. (*dissenting*). I respectfully dissent. I do not believe that the legislature intended that a defendant who violates more than one condition of his or her bail bond be subject to an undefined number of potential charges and punishment. Therefore I believe that the multiple convictions and penalties for bail jumping permitted by the majority opinion violate the double jeopardy provisions of the state and federal constitutions.

¶ 39. I agree with the majority that there are four factors used to determine legislative intent in a multi-

plicity analysis: statutory language; legislative history and context; the nature of the proscribed conduct; and the appropriateness of multiple punishments. In my view, based on the third and fourth factors, the legislature could not have intended that circuit courts create multiple crimes by imposing multiple conditions of bail.

¶ 40.   This is a case where good facts make bad law. Good facts, sometimes, can form a comfortable backdrop against which courts relax their vigilance to protect constitutional rights. The majority nicely articulates reasons why the conditions of bail set for Anderson, and which he violated, serve to protect different interests. In the majority's analysis, separate punishments for each violated condition also serve to protect those interests.

¶ 41.   However, the majority's interpretation in the hands of a zealous prosecutor could lead to results not intended by the legislature. In theory, a circuit court judge or a judicial court commissioner may set an infinite number of bail conditions for a defendant pursuant to Wis. Stat. § 946.49. Those conditions may include, for example, no contact orders, no drinking alcoholic beverages, no driving a motor vehicle, no weapons, no drugs, no new crimes, the requirement to attend school, attend AA meetings, abide by a curfew, remain in or stay out of certain geographical areas, attend counseling, take medication, live at home, keep a job, notify of change of address, etc. The number and nature of the bail conditions will depend in part on the individual practices and philosophy of the judge, the time the judge has to spend on the case, the local practice, the prosecutor's particular request, and other variables. Some judges may set bail conditions in great

detail while other judges may simply proscribe certain conduct by stating "no new arrests."

¶ 42.  For example, Judge No. 1 might order Emily Mathews, a defendant charged with the crime of forging a check, a felony, released on bail with the detailed conditions of "no drinking, no violation of a curfew of 8:00 p.m., no contact with Susie Fox, and no new crimes." Judge No. 2, a busier judge who is always concise, might release Ms. Mathews on bail with only the condition of "no new crimes." One night Ms. Mathews drinks a couple of beers, violates her curfew and becomes disorderly with Ms. Fox. Under the majority opinion, Ms. Mathews, who was released by Judge No. 1, now can be charged with four new felony charges of bail jumping and can face 20 more years in prison. Or, Ms. Mathews, who engages in identical conduct but was released by Judge No. 2, could only be charged with one count of felony bail jumping and face five years in prison. If Ms. Mathews repeated this behavior over a four-day period, in Judge No. 1's court she then would face 16 felony charges and an exposure of 80 years in prison. In Judge No. 2's court, she would only face four charges and 20 years in prison. *See State v. Grayson*, 172 Wis. 2d 156, 493 N.W.2d 23 (1992).

¶ 43.  In another example, the defendant, John Riley, a mentally disabled, alcoholic street person, is charged with three counts of shoplifting three bags of potato chips from a drug store on separate days. In each case, Mr. Riley was released on bail and ordered "to live with his mother, to see his mental health counselor everyday, to stay off the block where the drug store is located, to refrain from drinking alcoholic beverages, and to have no contact" with a certain friend of his. On one particular day, Mr. Riley starts to drink and then violates the other four conditions. Under the

majority's opinion and under *State v. Richter*, 189 Wis. 2d 105, 110, 525 N.W.2d 168 (Ct. App. 1994), Mr. Riley may be charged with 15 counts of bail jumping. For these 15 offenses he faces a possible sentence to the county jail for over 11 years and a fine of up to $150,000. This scenario is possible even if he were ultimately acquitted of the underlying shoplifting charges. Mr. Riley could face over 11 years in jail for behavior that, standing alone, has not been criminalized by the legislature.

¶ 44. Certainly the legislature intended that a defendant be held criminally accountable for violating the terms of the bail bond, even when the violation consists of conduct which in and of itself is not criminal behavior. Both these examples demonstrate the potential implications, however, of interpreting legislative intent as the majority has. The real issue we face in this case is whether the legislature intended, when it created the bail jumping statute in 1969, to subject the defendant to a single criminal charge if he or she violated one or more conditions of a bail bond, or was the intent to subject the defendant to potentially unlimited criminal charges for violating multiple conditions of one or more bail bonds? In other words, is each bond, or each condition of each bond, the appropriate unit of prosecution?

¶ 45. The United States Supreme Court, in *Ex Parte Lange*, 85 U.S. (18 Wall.) 163, 178 (1873), established that the Double Jeopardy clause prohibits punishment in excess of that authorized by the legislature. In construing the bail jumping statute to permit a circuit court to separately convict and sentence a defendant for having violated multiple conditions of a bail bond, the majority allows, in my view, punishment in excess of that authorized by the legislature.

¶ 46.   Moreover, the potential for infinite punishment fails the "appropriateness of the punishment" prong of the legislative intent analysis. Under the bail jumping statute, the legislature has authorized a certain punishment, based on the severity of the underlying offense, when at least one condition of bail is violated.

¶ 47.   Unlike most crimes the legislature creates, any punishment for the crime of bail jumping is often only part of the serious consequences for that prohibited conduct. When a defendant violates a condition of bail, the bail may be ordered forfeited, other conditions may be imposed, and/or the defendant may be taken into custody. *See* Wis. Stat. §§ 969.13, 969.08(2), and 940.49. If the defendant's violation of the bail bond is also a criminal offense, he or she could also be charged, convicted and sentenced for that crime.[1] If the defendant is subject to more than one bail bond and violates a condition common to both, he or she may be charged with bail jumping for each bail bond breached. *See Richter*, 189 Wis. 2d at 110. If the defendant is on probation or parole at the time of the bail bond violation, that prohibited conduct could also become the grounds for revoking the probation or parole. *See* Wis. Stat. §§ 973.10(2), 304.06(3). If the defendant is convicted of the underlying offense, the circuit court can consider the violation of the terms of bail as an aggra-

---

[1] For instance, the defendant's violation of a condition of bail may also constitute violation of one of the following crimes: battery, Wis. Stat. § 940.19; battery to a witness, Wis. Stat. § 940.19; intimidation of witnesses, Wis. Stat. §§ 940.42 and 940.43; intimidation of victims, Wis. Stat. §§ 940.44 and 940.45; court orders and penalties for prevention or dissuasion of a victim or witness in a criminal matter, Wis. Stat. §§ 940.47 and 940.48.

vating factor justifying an enhanced punishment at the time of sentencing. *See Waddell v. State,* 24 Wis. 2d 364, 368, 129 N.W.2d 201 (1964) (permitting use of information regarding complaints of other offenses as index of defendant's character); *Handel v. State,* 74 Wis. 2d 699, 701–02, 247 N.W.2d 711 (1976) (permitting consideration of pending criminal charges); *see also Elias v. State,* 93 Wis. 2d 278, 284, 182 N.W.2d 512 (1988) (listing cases permitting other uncharged and unproven offenses).

¶ 48. Finally, the plain language of the bail jumping statute itself supports my interpretation that the legislative intent was to impose one penalty for an intentional violation of "the terms of the bail bond." Wis. Stat. § 946.49. The majority correctly points out that Wis. Stat. § 990.001(1) provides that the word "terms" could be read in the singular. However, the majority then essentially reads out the word "the" before the word "terms" and replaces it with "a term." Thus the majority effectively reads a construction into the statute which is not present. Specifically, the majority interprets the bail jumping statute to prohibit the intentional failure to comply with "*a term* of his or her bond." If the legislature intended the result reached by the majority, it simply could have written the statute to read "whoever, having been released from custody under chapter 969, intentionally fails to comply with a term of his or her bond," is guilty of bail jumping. The legislature did not do so.

¶ 49. In my view, the presumption of legislative intent to create multiple penalties is overcome by a careful review of the implications of the majority opinion. The appropriate unit of prosecution is the bond, not the individual conditions. Once there is a violation of the "terms of the bond," the singular crime has been

committed for each bail bond the defendant has signed and the defendant is then subject to the penalties set forth in Wis. Stat. § 969.08: to increased bail requirements and altered condition(s) of release, the possible revocation of his or her release, the possible revocation of his or her probation or parole, to the forfeiture of the bond, and to a possible harsher sentence should he or she be convicted of the underlying offense.

¶ 50. In my view the possible scenarios I describe cannot be what the legislature intended when a defendant has committed the crime of bail jumping under Wis. Stat. § 946.49.[2] The presumption in favor of multiple sentences is overcome by an analysis of the nature of the proscribed behavior and the appropriateness of multiple punishments. I conclude that the appropriate unit of prosecution is the bond and not each individual condition. Under today's majority opinion and existing law, there is nothing to prevent the examples I gave from occurring. Therefore, I respectfully dissent.

¶ 51. I am authorized to state that Chief Justice Shirley S. Abrahamson and Justice Ann Walsh Bradley join this dissent.

---

[2] "[I]t is a precept of justice that punishment for a crime should be graduated and proportioned to the offense." *Weems v. United States*, 217 U.S. 349, 367 (1910). *See also Carmona v. Ward*, 576 F.2d 405, 426 n.6, (2d Cir. 1978) discussing origins of proportionality, and observing that English common law "had established a policy against disproportionate punishment, the ancient origins of which can be traced to the laws of Moses."