COURT OF APPEALS
DECISION
DATED AND FILED

June 1, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP378-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2018CF1197

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

TRAMAYNE D. MASSIE,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Racine County: MARK F. NIELSEN, Judge. *Affirmed*.

Before Gundrum, P.J., Neubauer and Kornblum, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.   Tramayne D. Massie appeals from a judgment of conviction and an order denying his postconviction motion.   Massie challenges four of his seventeen convictions on grounds that:    (1)his trial counsel ineffectively impeached a witness; and (2) Massie was impermissibly punished twice for the same conduct because two of the bail-jumping charges were multiplicitous.   We affirm.

## BACKGROUND

¶2      On August 17, 2018, police were executing a search warrant when they saw a woman furtively approach and enter the back seat of a parked car containing Massie and his brother, Raymond Massie.[1]   When the officers walked up to the car, they saw that Massie and Raymond were focused on a clear plastic sandwich baggie on the center console.   Raymond made eye contact with an officer and yelled, "[p]olice, [p]olice, [p]olice, go, go, go."

¶3      While this was happening, another officer said, "[h]ey, stop, [p]olice," and reached toward the car to stop Massie from moving the car or running away.   Massie and Raymond then got out of the moving car and tried to run away.   After the car hit a garage and stopped, an officer saw the woman in the back seat drop crack cocaine on the floor.   Officers chasing Massie also recovered a bag containing crack cocaine and heroin that they saw Massie throw while running away.

---

[1] We will refer to Raymond Massie by his first name because he shares the same last name as the appellant, Tramayne Massie.

¶4 The State charged Massie with seventeen crimes.[2] The following crimes are relevant to this appeal: possession of heroin with intent to deliver (count one); possession of cocaine with intent to deliver (count two); delivery of cocaine (count three); and felony bail jumping (counts eight, eleven, twelve, sixteen, and seventeen).

¶5 Massie pled not guilty, and the case proceeded to a jury trial. At the trial, the State called several witnesses, including Raymond. Raymond testified that he was sitting in Massie's car when a woman got in. According to Raymond, the woman and Massie exchanged money for cocaine. Raymond told the jury he did not know Massie had drugs when Raymond got in the car.

¶6 Raymond further testified that Raymond had four prior convictions and that he received an offer from the State in exchange for his testimony. On cross-examination, Raymond elaborated that the State agreed to drop four felony charges arising from this incident and charge him with misdemeanors.

¶7 The jury convicted Massie on all counts. The trial court sentenced him to a total of twelve years of initial confinement and eight years of extended supervision.

---

[2] Specifically, Massie was charged with the following: (1) possession of heroin with intent to deliver, as second or subsequent offense, *see* WIS. STAT. §§ 961.41(1m)(d)1, 939.50(3)(f), 961.48(1)(b); (2) possession of cocaine with intent to deliver, as a second or subsequent offense, *see* §§ 961.41(1m)(cm)1g, 939.50(3)(g), 961.48(1)(b); (3) delivery of cocaine, as a second or subsequent offense, *see* §§ 961.41(1)(cm)1g, 939.50(3)(g), 961.48(1)(b); (4) second-degree recklessly endangering safety, *see* WIS. STAT. §§ 941.30(2), 939.50(3)(g); (5) obstructing an officer, *see* WIS. STAT. §§ 946.41(1), 939.51(3)(a); and (6) twelve counts of felony bail jumping, *see* WIS. STAT. §§ 946.49(1)(b), 939.50(3)(h) (2017-18).

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

¶8  Massie filed a postconviction motion for a new trial, arguing that his trial counsel was ineffective. He also sought to vacate two of the bail-jumping charges as multiplicitous. The trial court held a hearing pursuant to *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979) and denied both claims. On appeal, Massie raises the same two issues.

## DISCUSSION

I.  *Ineffective Assistance of Trial Counsel*

¶9  Massie alleges that he is entitled to a new trial on count three, delivery of cocaine, and count eight, the related bail-jumping charge, because his trial counsel did not adequately cross-examine Raymond on the full extent of the consideration Raymond received for testifying. This claim lacks merit.

¶10  To establish ineffective assistance of counsel, a defendant must prove: (1) deficient performance; and (2) prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prove deficient performance, a defendant must show specific acts or omissions of counsel that are "outside the wide range of professionally competent assistance." *Id.* at 690. There is a "strong presumption that counsel acted reasonably within professional norms." *State v. Johnson*, 153 Wis. 2d 121, 127, 449 N.W.2d 845 (1990).

¶11  To show prejudice, the defendant must show that the lawyer's errors were so serious that the defendant was deprived of a fair trial and a reliable outcome. *Strickland*, 466 U.S. at 687. In order to succeed, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

*Id.* at 694. Whether counsel's performance was deficient and whether that deficient performance prejudiced the defense are questions of law we review de novo. *Johnson*, 153 Wis. 2d at 128.

¶12 Massie claims that his trial counsel's cross-examination of Raymond was deficient because trial counsel did not fully explore the incentives Raymond had to testify for the State. Massie contends that trial counsel should have questioned Raymond about his prior convictions and the substantial reduction in charges he received from the State. Massie claims this would have emphasized Raymond's lack of credibility and his willingness to "shade his testimony to please the State."[3] This claim fails on both the deficiency and prejudice prongs.

¶13 Raymond explicitly testified on direct examination that he had four prior convictions. There was no need for Massie's trial counsel to elicit this information again on cross-examination, and Massie was not prejudiced by his lawyer's failure to do so. *See State v. Arredondo*, 2004 WI App 7, ¶33, 269 Wis. 2d 369, 674 N.W.2d 647 (no prejudice where defendant admitted he lied to police on direct examination); *State v. Sohn*, 193 Wis. 2d 346, 353, 535 N.W.2d 1 (Ct. App. 1995) (evidence of prior convictions admitted for impeachment purposes under WIS. STAT. § 906.09 generally limited to asking witness if he or she has been convicted of a crime and, if so, how many times).

---

[3] In his reply brief, Massie asserts for the first time that his trial lawyer also should have presented to the jury "the specific reduction in maximum penalties which [the trial judge] brought up." Not only is this issue conclusory and undeveloped, it is raised for the first time in a reply brief, and we decline to address it. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (court need not consider undeveloped arguments); *A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 492, 588 N.W.2d 285 (Ct. App. 1998) (court will generally not address issues raised for the first time in a reply brief).

¶14     Moreover, both the State and trial counsel explored the consideration Raymond received for testifying.  On direct examination, Raymond testified that he received an offer of probation in exchange for his testimony:

> Q  Mr. Massie, have you received any consideration or an offer from the State for your testimony today?
>
> A  Yes.  Probation with no jail time.
>
>         ….
>
> Q  Did we offer you misdemeanors or felonies?
>
> A  Yes.  A misdemeanor obstruction, disorderly conduct.
>
> Q  Thank you.  Would those be charges be from the incident that occurred on August 17, 2018?
>
> A  They would.

On cross-examination, trial counsel followed up by asking Raymond about the specific charges the State agreed to drop:

> Q  …. Mr. Massie, isn't it true that you are currently facing four charges as they relate to this incident?
>
> A  I am.
>
> Q  And those four charges include the possession with intent to deliver heroin, possession with intent cocaine.  Manufacture and delivery of cocaine.  Each a felony, as well as one count of misdemeanor obstructing.  Is that correct?
>
> A  It is.
>
> Q  Each of these felonies further contains a second and subsequent enhancer that would enhance your maximum penalty on those felonies?
>
> A  It would.
>
> Q  Isn't it true as well that as part of your testimony in this matter, [the] State has agreed to recommend dropping those felony charges, having you plead to misdemeanors which

6

> would not carry the threat of a prison sentence. Is that
> correct?
>
> A It is.

We conclude that the lawyer's cross-examination of Raymond was reasonable. The jury was aware that Raymond was facing substantial charges and that the State agreed to a significant reduction in these charges in exchange for his testimony.

¶15 Massie does not dispute that Raymond's testimony shows he had an incentive to testify for the State. Rather, in a one-sentence argument, Massie argues that trial counsel should have requested a jury instruction indicating that the State agreed not to use Raymond's testimony against him. Not only do we find this claim conclusory and undeveloped, *see State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (we do not consider on appeal undeveloped arguments), Massie fails to explain how this instruction would have undermined Raymond's credibility. Indeed, if anything, Raymond's testimony shows that he was truthful because he knew his testimony could not be later used against him. For all of these reasons, we reject Massie's ineffective-assistance-of-counsel claim.

II. *Multiplicity*

¶16 We turn to Massie's claim that two of his bail-jumping convictions were multiplicitous. Both the state and federal constitutions protect a defendant from being punished twice for the same offense. *State v. Anderson*, 219 Wis. 2d 739, 746, 580 N.W.2d 329 (1998). Multiplicitous charges, that is, charging a single criminal offense in more than one count, are impermissible because they violate the double-jeopardy provisions of the Wisconsin and United States

7

Constitutions. *Id.* Whether an individual's constitutional right to be free from double jeopardy has been violated is a question of law we review de novo. *Id.*

¶17 We examine multiplicity claims using a two-part test. *See State v. Richter*, 189 Wis. 2d 105, 108-09, 525 N.W.2d 168 (Ct. App. 1994). First, we consider whether the charged offenses are identical in law and fact. *Id.* Then, we consider whether the legislature intended to authorize multiple punishments. *Id.* at 109. If the first part of the test reveals that the charged offenses are not identical in law and fact, a presumption arises that the legislature did not intend to preclude cumulative punishments. *State v. Eaglefeathers*, 2009 WI App 2, ¶7, 316 Wis. 2d 152, 762 N.W.2d 690.

¶18 In this case, the State concedes that the bail-jumping charges are identical in law because they were charged under the same statute, WIS. STAT. § 946.49. The parties disagree, however, on whether the charges are different in fact.

¶19 Massie claims that the bail-jumping charges in counts eleven and twelve are identical in fact with the bail-jumping charges in counts sixteen and seventeen because they arise from the same underlying conduct. Counts eleven and twelve allege that Massie twice violated a condition of his bond in Racine County Circuit Court case No. 2018CF44 by committing new crimes. The underlying bases for counts eleven and twelve were Massie's crimes of possession of heroin with intent to deliver and possession of cocaine with intent to deliver. Counts sixteen and seventeen allege that Massie twice violated a condition of his bond in case No. 2018CF44 by possessing two different controlled substances, heroin and cocaine. Accordingly, Massie contends that counts eleven and sixteen are the same in fact because they are both based on his act of possessing heroin.

8

Similarly, he argues that counts twelve and seventeen are the same in fact because they are based on his act of possessing cocaine. We disagree.

¶20     The focus in this case is not whether the bail-jumping charges are based on the same volitional acts. In fact, no one appears to dispute that they are. Rather, the dispositive question is whether each of the bail-jumping charges are significantly different in nature because each requires proof of a fact that the others do not. *See Eaglefeathers*, 316 Wis. 2d 152, ¶¶11-13; *Richter*, 189 Wis. 2d at 109. We conclude that they are significantly different.

¶21     For count eleven, the State was required to prove that Massie: (1) knew that one of his bond conditions *prohibited him from committing any new crimes*; and (2) had the mental purpose to violate the condition prohibiting him from committing new crimes by committing the crime of possession of heroin with the intent to deliver. *See* WIS JI—CRIMINAL 1795 (2018). In contrast, for count sixteen, the State was required to prove that Massie: (1) knew that one of his bond conditions *prohibited him from possessing controlled substances*; and (2) had the mental purpose to violate the condition by possessing heroin. *See id.* These counts are different in nature because each count required proof of a different bond condition. Count eleven required proof of the "no new crimes" bond condition, while count sixteen required proof of the "no controlled substances" bond condition. Additionally, each count required the State to prove that Massie had the specific intent to violate that specific provision.

¶22     Similarly, for count twelve, the State was required to prove that Massie: (1) knew that one of his bond conditions *prohibited him from committing any new crimes*; and (2) had the mental purpose to violate the condition prohibiting him from committing new crimes by committing the crime of

9

possession of cocaine with the intent to deliver. *See id.* In contrast, for count seventeen, the State was required to prove that Massie: (1) knew that one of his bond conditions *prohibited him from possessing controlled substances*; and (2) had the mental purpose to violate the condition by possessing cocaine. *See id.* These counts are different in nature for the same reasons. Count twelve required proof of the "no new crimes" bond condition, while count seventeen required proof of the "no controlled substances" bond condition. Moreover, each count required the State to prove that Massie had the specific intent to violate that specific provision. Accordingly, we conclude Massie's bail-jumping charges are different in fact. *See Eaglefeathers*, 316 Wis. 2d 152, ¶¶10-13 (bail-jumping offenses arising from single volitional act different in nature where each count of bail jumping would require separate proof by the State); *Richter*, 189 Wis. 2d at 109 (multiple counts of bail jumping based on one illegal phone call different in fact where each count would give rise to individual fact inquiry).

¶23 Once we have determined that the charged offenses are not identical in law and fact, it then becomes the defendant's burden "to show that the legislature intended to preclude cumulative punishments." *Eaglefeathers*, 316 Wis. 2d 152, ¶15. Massie does not address this part of the multiplicity test on appeal. Accordingly, we decline to consider it. *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 492, 588 N.W.2d 285 (Ct. App. 1998) ("[I]n order for a party to have an issue considered by this court, it must be raised and argued within its brief.").

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2019-20).