# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2011AP2833-CR |
| COMPLETE TITLE: | State of Wisconsin,<br>          Plaintiff-Respondent,<br>     v.<br>Jacqueline R. Robinson,<br>          Defendant-Appellant-Petitioner. |

REVIEW OF A DECISION BY THE COURT OF APPEALS
Reported at 345 Wis. 2d 62, 823 N.W.2d 840
(Ct. App. 2012 – Unpublished)

| | |
|---|---|
| OPINION FILED: | June 10, 2014 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | September 3, 2013 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Milwaukee |
| JUDGE: | Paul Van Grunsven |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | PROSSER, J., concurs. (Opinion filed.) |
| DISSENTED: | ABRAHAMSON, C.J., BRADLEY, J., dissent. (Opinion filed.) |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the defendant-appellant-petitioner, there were briefs by *Dustin C. Haskell*, assistant state public defender, and oral argument by *Dustin C. Haskell*.

For the plaintiff-respondent, the cause was argued by *Sara Lynn Larson*, assistant attorney general, with whom on the brief was *J.B. Van Hollen*, attorney general.

An amicus curiae brief was filed by *Ellen Henak* and *Henak Law Office. S.C.*, Milwaukee, on behalf of Wisconsin Association of Criminal Defense Lawyers.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2011AP2833-CR
(L.C. No. 2011CF288)

STATE OF WISCONSIN                    :        IN SUPREME COURT

State of Wisconsin,

     Plaintiff-Respondent,

     v.

Jacqueline R. Robinson

     Defendant-Appellant-Petitioner.

**FILED**

**JUN 10, 2014**

Diane M. Fremgen
Clerk of Supreme Court

Review of a decision of the Court of Appeals. *Affirmed.*

¶1 MICHAEL J. GABLEMAN, J.    This is a review of an unpublished decision of the court of appeals[1] affirming a decision and order of the Milwaukee County Circuit Court[2] denying defendant Jacqueline R. Robinson's (Robinson) post-conviction motion to reinstate her original sentence.

¶2 The question before us is whether Robinson's constitutional protection against double jeopardy was violated when the circuit court increased her sentence one day after

---

[1] State v. Robinson, No. 2011AP2833-CR, unpublished slip op. (Wis. Ct. App. Oct. 23, 2012).

[2] The Honorable Paul R. Van Grunsven presiding.

initially imposing it. Robinson argues that the circuit court's decision to resentence her one day after her original sentence was imposed violated both state and federal constitutional protections against double jeopardy because she had a legitimate expectation of finality in her original sentence.[3] The State contends that Robinson had no legitimate expectation of finality and, consequently, Robinson's constitutional protection against double jeopardy was not violated.

¶3 Under the reasoning of United States v. DiFrancesco, 449 U.S. 117, 101 S. Ct. 426, 66 L. Ed. 2d 328 (1980) and the factors set forth in State v. Jones, 2002 WI App 208, 257 Wis. 2d 163, 650 N.W.2d 844, we hold Robinson did not have a legitimate expectation of finality and the circuit court acted appropriately in resentencing Robinson. Accordingly, we affirm the court of appeals.

## I. BACKGROUND AND PROCEDURAL HISTORY

¶4 The facts relevant to this appeal are undisputed. On January 19, 2011, Robinson was arrested for operating a motor vehicle while her driving privileges were suspended, for loitering, and for violation of probation. Robinson was taken to the police station for processing. At the police station, a police officer conducted a search of Robinson and recovered a

---

[3] In United States v. DiFrancesco, 449 U.S. 117, 101 S. Ct. 426, 66 L. Ed. 2d 328 (1980), the United States Supreme Court held that if a defendant has a legitimate expectation in the finality of her sentence, then an increase in that sentence violates double jeopardy.

2

pill bottle containing Alprazolam pills.[4] Due to suspicion Robinson might be hiding additional narcotics, Robinson was escorted to a bathroom and two police officers conducted a further search of Robinson's person. During this search, the police officers recovered a second pill bottle containing Oxycontin pills.[5] At this point, a struggle ensued. Robinson struck one of the police officers on the officer's jaw and forehead, and kicked the second police officer twice on the officer's left knee.

¶5 On January 22, 2011, the State filed a criminal complaint charging Robinson with one count of possession of narcotic drugs, in violation of Wis. Stat. § 961.41(3g)(am)(2009-10)[6] (Count One), and two counts of battery to a law enforcement officer, in violation of Wis. Stat. § 940.20(2) (Count Two and Count Three).

¶6 On April 12, 2011, Robinson and the State entered into a plea agreement. Pursuant to the plea agreement, Robinson pled guilty to all three counts.

¶7 Robinson's arrest on January 19, 2011, was not her first encounter with the law. At the time of her arrest,

---

[4] Alprazolam is the generic ingredient in Xanax, a prescription anxiety medication, which is a Schedule IV controlled substance. See Wis. Stat. § 961.20(2)(a)(2009-10).

[5] Oxycontin (Oxycondine) is a Schedule II controlled substance. See Wis. Stat. § 961.16(2)(a)11 (2009-10).

[6] All subsequent references to the Wisconsin Statutes are to the 2009-10 version unless otherwise indicated.

Robinson was on probation after pleading guilty to three criminal charges in Waukesha County in 2008.[7] Those three criminal charges were comprised of two counts of receiving stolen property less than or equal to $2,500, in violation of Wis. Stat. § 943.34(1)(a) (Waukesha County cases 08-CM-2563 and 08-CM-1636) and one count of possession with intent to deliver narcotics, in violation of Wis. Stat. § 961.41(1m)(a) (Waukesha County case 08-CF-518). Sentence on the Waukesha County cases was withheld and Robinson was placed on three years of probation. No jail time was ordered as a condition of that probation.

¶8 As a result of her arrest in Milwaukee County on January 19, 2011, Robinson was revoked from probation on all three Waukesha County cases. On April 6, 2011, the Waukesha County Circuit Court, the Honorable William J. Domina, presiding, sentenced Robinson to two years initial confinement and four years extended supervision for case 08-CF-518. For Waukesha County cases 08-CM-2563 and 08-CM-1636, Robinson was sentenced to nine months initial confinement for each count, with each sentence to run concurrent with the sentence imposed for case 08-CF-518. In sum, the circuit court sentenced Robinson to two years of initial confinement and four years of probation as a consequence of the revocation of her probation (collectively, "Waukesha County sentences").

---

[7] As part of the plea agreement for the 2008 charges, eleven charges were dismissed and read-in to a global sentence for the three other criminal convictions.

¶9 On May 10, 2011, the Milwaukee County Circuit Court, the Honorable Judge Van Grunsven, presiding, held a sentencing hearing for Robinson for Counts One, Two, and Three. The hearing began with the State and Robinson making a joint recommendation that any sentence the circuit court imposed be concurrent with the Waukesha County sentences. The State recited Robinson's prior criminal record and the factual background that led to Robinson's most recent charges. The State explained that, in 2008, eleven charges had previously been dismissed and read-in for three other convictions in Waukesha County and Robinson had received only probation for those three offenses. The State further explained that Robinson's probation had been revoked and she had been sentenced to "two years in custody and four years extended supervision." The State recommended that the circuit court not impose any additional incarceration time for Robinson's most recent plea agreement for Counts One, Two, and Three.

¶10 Prior to imposing sentence on those counts, Judge Van Grunsven noted that "much of what [he] read in the complaint [was] absolutely despicable behavior." At one point during the sentencing hearing, he addressed the defendant directly:

> Quite frankly, in relation to your character, this Court considers the litany of cases that were dismissed and read-in as part of the plea negotiations out in Waukesha and while everyone seems to say that Jacqueline has turned the corner, I think the history and violation of laws of the state give me great cause for concern, despite the fact she's been off of probation she's been revoked and I also see her as a threat to society.

5

She is continuing to commit crimes, despite the fact she has pending charges, leading to the bail jump charge and other cases and I just, while she indicates that she's now clean and sober and going to take the opportunities seriously, I'm not so certain.

I think she has a vicious addiction that is going to be a life-long struggle. I consider the fact Judge Domina ordered a sentence of two years in and four years out after she was revoked and returned to him for sentencing. I do need to consider that.

I also look at the fact she has pled guilty, accepted responsibility. I also look at the need to protect the public.

¶11 After his remarks, Judge Van Grunsven sentenced Robinson on Count One to 42 months in the Wisconsin State Prison System, consisting of 18 months initial confinement and 24 months extended supervision, concurrent with any other sentence. On Counts Two and Three, Judge Van Grunsven sentenced Robinson to 60 months in the Wisconsin State Prison System, consisting of 24 months initial confinement and 36 months extended supervision, concurrent with any other sentence. Because Judge Van Grunsven ordered that the sentences run concurrent with the Waukesha County sentences, Robinson effectively received no additional incarceration after being sentenced on Counts One, Two, and Three.

¶12 The next day, May 11, 2011, the circuit court sua sponte recalled the case. Judge Van Grunsven stated that after the hearing, he did some research on the Consolidated Court

6

Automation Programs (CCAP) and realized he made a mistake.[8] Specifically, the court remarked that it mistakenly believed the Waukesha County sentences Robinson was currently serving amounted to two years and nine months initial incarceration, when in fact she had only been sentenced to two years. Judge Van Grunsven explained:

> At the conclusion of the hearing and subsequent thereto the Court did some research and I realized I made a mistake. The split sentence I proposed yesterday did not reflect this Court's intent as far as a fair sentence in this case.
>
> . . .
>
> There was a lengthy record with regard to a number of cases in Waukesha County and I mis-heard and mis-noted some of the sentences that were handed down. Specifically 08CM1636, in which the Receiving Stolen Property case, Ms. Robinson was given nine months. It was my mistaken impression that she said the nine months was consecutive and tacked on to the 24 months that Judge Domina ordered in that case. Quite frankly a review of CCAP subsequent to yesterday's hearing revealed that in fact the nine months in that case was concurrent to 08CF518 and 08CM2563.
>
> In fashioning a sentence in this case, the Court does look at the gravity of the offense, the defendant's character and need to protect the public and yesterday I started my sentencing arguments by talking about how despicable the behavior was by Ms. Robinson in this case in terms of her reactions and interactions with the police officers in this case.

---

[8] CCAP is a case management system provided by the Wisconsin Circuit Court Access program. Its purpose is to provide public access online to reports of activity in Wisconsin circuit courts. See, e.g., State v. Bonds, 2006 WI 83, ¶6, 292 Wis. 2d 344, 717 N.W.2d 133.

7

> In fashioning a sentence the Court does need to look at probation and probation is not appropriate. The court considers prior record of convictions and the court does look at a period of incarceration and believes it is necessary to accomplish the objectives of good sentencing, which is the gravity of the offense, the defendant's character and need to protect the public.
>
> Given all of that and harkening back to the comments made yesterday, I asked this case be called back so I can re-state and announce the sentence I wanted to achieve yesterday . . . .

¶13 Judge Van Grunsven then modified Robinson's sentences for Counts Two and Three. For both Counts Two and Three, Judge Van Grunsven increased Robinson's sentence from 60 months, consisting of 24 months initial confinement and 36 months extended supervision, to 69 months, consisting of 33 months initial confinement and 36 months extended supervision, to run concurrently with any other sentence. The effect of Judge Van Grunsven's modification of Robinson's sentences for Counts Two and Three was a nine-month increase in Robinson's time of incarceration.

¶14 On November 14, 2011, Robinson filed a postconviction motion seeking restoration of the sentence imposed on May 10, 2011. Robinson's postconviction motion asserted that the circuit court violated both her state and federal constitutional protections against double jeopardy when it resentenced her on May 11, 2011. In her postconviction motion, Robinson noted that the May 10, 2011, sentence was neither illegal nor incorrect and the record clearly established the court understood Robinson's existing sentences. Instead, Robinson argued the circuit court

"increased the sentence based upon mere second guessing of its original decision" and therefore violated Robinson's right to be free from double jeopardy.

¶15 The circuit court denied the postconviction motion, finding no violation of the double jeopardy clause. Relying on State v. Burt, 2000 WI App 126, 237 Wis. 2d 610, 614 N.W.2d 42, the circuit court found that it had "not increase[d] defendant Robinson's sentence upon reflection but instead because the court was under a mistaken impression about her Waukesha County sentence."

¶16 The court of appeals issued a per curiam decision affirming the circuit court, holding the circuit court did not violate Robinson's double jeopardy protection when it increased her sentence. The court of appeals recognized that "[a] sentencing court violates double jeopardy when it increases a previously imposed sentence if the defendant had a legitimate expectation of finality in the original sentence." Robinson, No. 2011AP2833-CR, unpublished slip op., ¶3. The court of appeals noted that in Burt the court had held the sentencing court did not violate an individual's right to be free from double jeopardy when it changed a sentence later the same day in order to correct a "'slip of the tongue.'" Id. at ¶5 (quoting Burt, 237 Wis. 2d 610, ¶12). In comparing the facts of Burt to the facts of Robinson's case, the court of appeals noted that "Robinson served only one day of her sentence when the circuit court realized its mistake . . . and recalled Robinson to increase her sentence." Id. The court of appeals reasoned that

"[t]he difference in time between the circuit court's action in Burt and the circuit court's action here is a matter of hours, not days." Id. at ¶11. The court of appeals acknowledged that "Robinson's expectation in the finality of her sentence was not illegitimate," but concluded "the sentence did not yet have a degree of finality that prohibited the circuit court from correcting its own mistake the day after the initial sentencing." Id.

¶17 Robinson petitioned this court for review of the decision of the court of appeals. We accepted the petition on February 12, 2013.

## II. STANDARD OF REVIEW

¶18 The sole issue in this case is whether Robinson's protection against double jeopardy was violated by the circuit court's decision to increase Robinson's sentence the day after her original sentence was imposed. "Whether an individual's constitutional right to be free from double jeopardy has been violated is a question of law that this court reviews de novo." State v. Anderson, 219 Wis. 2d 739, 746, 580 N.W.2d 329 (1998).

## III. DISCUSSION

¶19 The question before us is whether Robinson's constitutional protection against double jeopardy was violated when the circuit court increased her sentence one day after initially imposing it. Robinson argues that the circuit court's decision to resentence her one day after her original sentence was imposed violated her state and federal constitutional protections against double jeopardy because she had a legitimate

10

expectation of finality in her original sentence. The State contends that Robinson had no legitimate expectation of finality and, consequently, Robinson's constitutional protection against double jeopardy was not violated.

¶20 In order to fully understand the arguments put forth by the parties, we briefly review the case law upon which their arguments are based.

¶21 The Fifth Amendment to the United States Constitution protects an individual from being twice put in jeopardy for the same offense. The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution states, "[N]or shall any person be subject to the same offence to be twice put in jeopardy of life or limb." In Benton v. Maryland, 395 U.S. 784, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969), this guarantee against double jeopardy was held enforceable against the states through the Fourteenth Amendment. The Wisconsin Constitution also guarantees protection from double jeopardy. Article I, § 8(1) states, in relevant part, "[N]o person for the same offense may be put twice in jeopardy of punishment. . . ." Because the protections afforded by these provisions are coextensive, Wisconsin courts have traditionally treated them as one. State v. Gruetzmacher, 2004 WI 55, ¶21, 271 Wis. 2d 585, 679 N.W.2d 533.

¶22 The guarantee against double jeopardy encompasses three separate constitutional protections. North Carolina v. Pearce, 395 U.S. 711, 717, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969). "It protects against a second prosecution for the same

11

offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." Id. The prohibition at issue in this case concerns an individual's protection against multiple punishments.

¶23 In DiFrancesco, 449 U.S. 117, the United States Supreme Court held that the appropriate inquiry under the third of these constitutional protections is whether the defendant has a legitimate expectation of finality in her sentence. If a defendant has a legitimate expectation of finality in her sentence, then an increase in that sentence violates double jeopardy. Id. at 437-38; see also Jones v. Thomas, 491 U.S. 376, 394, 109 S. Ct. 2522, 105 L. Ed. 2d 322 (1989) (Scalia, J., dissenting) ("It is clear from DiFrancesco . . . that when a sentence is increased in a second proceeding, the application of the double jeopardy clause turns on the extent and legitimacy of a defendant's expectation of finality in that sentence. If a defendant has a legitimate expectation of finality, then an increase in that sentence is prohibited.")

¶24 The Supreme Court in DiFrancesco elaborated on the underlying rationale of the Double Jeopardy Clause:

> The constitutional prohibition against 'double jeopardy' was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense. . . . The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby

12

subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

DiFrancesco, 449 U.S. at 127-28 (quoting Green v. United States, 355 U.S. 184, 187-88, 78 S. Ct. 221, 2 L. Ed. 2d 199 (1957)).

¶25 The Court noted that, while these considerations are rational with regard to reprosecution after acquittal, they do not have "significant application to the . . . review [of] a sentence." Id. at 136. The Court in DiFrancesco concluded that sentences and acquittals are very different for double jeopardy purposes. While the Double Jeopardy Clause renders an acquittal final and unreviewable, the same does not hold true for sentences. "[A] sentence does not have the qualities of constitutional finality that attend an acquittal." Id. at 134. Consequently, "the Double Jeopardy Clause does not provide the defendant with the right to know at any specific moment in time what the exact limit of his punishment will turn out to be." Id. at 137.

¶26 As this court observed in Gruetzmacher, the "issuance of the United States Supreme Court's decision in DiFrancesco changed the landscape of double jeopardy law" in sentencing cases. Gruetzmacher, 271 Wis. 2d 585, ¶30. "After DiFrancesco dismissed the notion that there was a per se rule against modifying a sentence, the idea that modification to increase sentences already being served ran afoul of the double jeopardy clause was no longer sound." Id. Under DiFrancesco's interpretation of the Double Jeopardy Clause of the Fifth

13

Amendment, it is unquestionably permissible, in certain contexts, to review and modify a defendant's sentence after the defendant has already begun serving the originally-imposed sentence.

¶27 Following DiFrancesco, several cases in Wisconsin have considered whether sentence modifications violated a defendant's protection against double jeopardy due to the defendant's legitimate expectation of finality in her sentence.

¶28 In Burt, the court of appeals applied the rationale set forth in DiFrancesco in a case where the circuit court misspoke during sentencing and sentenced the defendant to concurrent sentences rather than consecutive. The circuit court became aware of the mistake when it sentenced Burt's co-conspirator immediately after sentencing Burt. The circuit court called Burt back into the courtroom the same day and modified the sentence. The court of appeals held that "the protections against double jeopardy were not violated when the trial court realized it made an error of speech in pronouncing Burt's sentence and took immediate steps to correct the sentence before the judgment of conviction was entered into the record." Burt, 237 Wis. 2d 610, ¶11. The court of appeals reasoned that "Burt had already been convicted and was not faced with the embarrassment, expense, and ordeal or continued state of anxiety and insecurity caused by repeated attempts to convict him." Id. (internal quotation marks omitted). The court of appeals concluded that, where the circuit court was simply correcting an error in speech in the pronouncement of the sentence later in

14

the same day the original sentence was imposed, the defendant's interest in finality "is not a significant concern." Id. at ¶12.

¶29 In State v. Willet, 2000 WI App 212, 238 Wis. 2d 621, 618 N.W.2d 881, the court of appeals examined the same question that was presented in Burt——that is, whether the defendant had a legitimate expectation of finality in his original sentence——and concluded that the circuit court erred in modifying its original sentence after the defendant had already begun serving it. The circuit court in Willet initially determined that the defendant's sentences for three convictions could not, under the law, be served consecutively to a sentence that the defendant was to receive four days later when his probation was revoked. Willet, 2000 WI App 212, ¶2. Four months later, the circuit court concluded that the defendant's initial sentence was based on an erroneous understanding of the law and modified the three sentences so that they were consecutive to the later sentence. Id. at ¶1. The court of appeals reversed the circuit court, concluding the defendant had a legitimate expectation of finality under the circumstances. Id.

¶30 The court of appeals in Willet reasoned that, unlike the defendant in Burt, "who was resentenced on the same day, Willet had already been serving his sentence for four months when the trial court changed it from concurrent to consecutive." Id. at ¶6. Also, the court of appeals emphasized the fact that, unlike Burt, this was clearly not a "slip of the tongue" by the circuit court. Id. Instead, the circuit court misunderstood

15

the law, and, four months later, attempted to "seek a stiffer sentence for Willet." Id. The court of appeals concluded that Willet had a legitimate expectation of finality in the sentence, and that "[t]he double jeopardy clause prevents the trial court from going back, four months later, to redo the sentence." Id.

¶31 In State v. Jones, 2002 WI App 208, the court of appeals, in light of DiFrancesco, provided a framework for analyzing whether a defendant's right to be free from double jeopardy has been violated when he is resentenced after an original sentence has already been imposed. Jones distilled two principles from DiFrancesco concerning the issue of whether a court may increase a sentence after the defendant has begun serving the sentence. First, a per se rule no longer exists prohibiting a court from increasing a defendant's sentence after the defendant has begun to serve the sentence. Jones, 2002 WI App 208, ¶9. Second, "'[i]f a defendant has a legitimate expectation of finality [in the sentence], then an increase in that sentence is prohibited by the double jeopardy clause.'" Id. (quoting United States v. Fogel, 829 F.2d 77, 87 (D.C. Cir. 1987)). The corollary to that second principle, however, is that "if a circumstance exists to undermine the legitimacy of that expectation, then a court may permissibly increase the sentence." Id.

¶32 The court of appeals in Jones further noted that Wisconsin precedent has long recognized that "the application of the double jeopardy clause to an increase in a sentence turns on the extent and legitimacy of a defendant's expectation of

16

finality in the sentence." Id. at ¶10. The court of appeals then concluded that whether a defendant has a legitimate expectation of finality is "the analytical touchstone of double jeopardy . . . , which may be influenced by many factors, such as the completion of the sentence, the passage of time, the pendency of an appeal, or the defendant's misconduct in obtaining sentence." Id.

¶33 In Gruetzmacher, this court applied the non-exhaustive list of factors set forth in Jones to determine whether the circuit court erred in modifying the defendant's sentence two weeks after it was initially imposed. In Gruetzmacher, the circuit court originally sentenced the defendant to 40 months initial confinement for a substantial battery charge. Gruetzmacher, 2004 WI 55, ¶7. During the initial sentencing hearing, the circuit court indicated that 40 months incarceration was the minimum period the court believed was appropriate as a consequence of the defendant's actions. Id. at ¶10. Later the same day, the circuit court realized that the substantial battery charge was a Class E felony that carried a maximum initial confinement of 24 months. Id. at ¶8. Realizing that the 40-month sentence exceeded the maximum amount that could be imposed for the offense, the circuit court attempted to contact the parties to schedule another hearing. Id. The parties were unable to reconvene until two days later. Id. When the parties reconvened, the circuit court explained the error to the parties and scheduled a new sentencing hearing for two weeks later. Id. At the new sentencing hearing, the

17

circuit court modified Gruetzmacher's sentence so that he was serving 24 months initial confinement on the substantial battery charge. Id. at ¶11. Additionally, the circuit court modified another sentence Gruetzmacher was to serve for bail jumping from 12 years of probation to 40 months initial confinement, all to run concurrent with the substantial battery charge. Id. In effect, the resentencing did not increase the amount of incarceration time originally imposed, but shifted the 40-month sentence from the substantial battery charge to the bail jumping charge.

¶34 In Gruetzmacher, this court noted that the factors set forth in Jones illustrate "there is no immutable rule prohibiting sentence increases once a defendant has begun to serve the sentence. Instead, the Jones factors must be evaluated in light of the circumstances in each particular case." Id. at ¶34. We then observed that the record indicated the circuit court clearly stated that 40 months was the appropriate sentence for Gruetzmacher considering his lengthy prior criminal record and violent conduct, and concluded the circuit court acted appropriately. Id. at ¶37. We stressed that the circuit court discovered the error in sentencing on the same day and the parties reconvened two days later to address the matter. Id. at 38. Additionally, the circuit court took steps to keep Gruetzmacher from entering the prison system until the sentencing error was corrected, and "[t]he fact that the justice system as a whole had not yet begun to act upon the circuit court's sentence is an important fact that bears

18

emphasis." Id. Moreover, this court reasoned that Gruetzmacher "was not a case where, upon mere reflection, the circuit court decided to increase . . . [the defendant's] sentence." Id. Accordingly, we concluded "Gruetzmacher did not have a legitimate expectation of finality" and that the circuit court acted appropriately in resentencing him. Id.

¶35 The State argues that Gruetzmacher and Burt are analogous to the facts of the present case. The State contends that, like Gruetzmacher and Burt, there was a very limited passage of time between when the circuit court erred in imposing the original sentence and when it recalled the case. Further, the State argues that in Burt, the circuit court misspoke when it imposed the original sentence, stating the defendant would serve "concurrent" sentences when the circuit court intended to say "consecutive" sentences. Similarly, the State argues that in the instant case the circuit court misspoke when it first sentenced Robinson due to misunderstanding the nature of how the new sentences would interact with Robinson's prior criminal record.

¶36 Robinson disagrees with the State's reading of Burt and Gruetzmacher and argues both cases are easily distinguishable from the present case. Robinson points out that, in Burt, the circuit court's intention to impose consecutive, rather than concurrent, sentences was clear from the circuit court judge's notes, which were sealed into the record. Here, Robinson argues, nothing in the record suggests

the circuit court misunderstood the nature of the sentences being imposed at the time of the original sentencing hearing.

¶37 With regard to Gruetzmacher, Robinson contends that the present case is distinguishable because the circuit court did not misunderstand the law when it imposed the original sentence. In Gruetzmacher, the circuit court changed what was an illegal sentence because the court initially exceeded the maximum allowable sentence. Robinson argues that, unlike Gruetzmacher, Robinson's original sentence was legally imposed and nothing in the record suggests the circuit court intended to impose a sentence different from the original sentence. Robinson further argues that the present case is more properly compared to Willet than it is to Burt or Gruetzmacher.

¶38 We agree with the State's argument that this case is analogous to Burt and Gruetzmacher and distinguishable from Willet. As detailed above, the court of appeals in Jones set forth a list of factors, which were adopted and applied by this court in Gruetzmacher, that are relevant to whether a defendant has a legitimate expectation of finality in his or her sentence.[9]

---

[9] It bears emphasis that the factors listed in Jones are non-exhaustive. See State v. Jones, 2002 WI App 208, ¶10, 257 Wis. 2d 163, 650 N.W.2d 844 (emphasis added) (noting that a "defendant's legitimate expectation of finality in the sentence . . . may be influenced by many factors, such as the completion of the sentence, the passage of time, the pendency of an appeal, or the defendant's misconduct in obtaining sentence.") However, regarding the other two factors specifically set forth in Jones, both parties agree that Robinson did not engage in any misconduct in obtaining her original sentence and there was no pendency of an appeal. Accordingly, they do not apply here.

Here, two Jones factors are particularly germane: (1) the completion of the sentence and (2) the passage of time between the original sentence and resentencing. In Burt, the circuit court modified the defendant's sentence on the same day the original sentence was imposed. In Gruetzmacher, the circuit court realized its error on the same day the original sentence was imposed, notified the parties the same day, and scheduled a hearing to resentence the defendant two days later. Here, Judge Van Grunsven realized hours after sentencing Robinson that he had misunderstood the Waukesha County sentences and, because of that misunderstanding, erred in imposing the original sentence. Consequently, in order to rectify this mistake, Judge Van Grunsven recalled and resentenced Robinson the following day. Like Burt and Gruetzmacher, little time passed between the original imposition of Robinson's sentence and her resentencing. Willet is easily distinguishable from this line of cases, in that a four-month gap existed between the original sentencing of the defendant and the circuit court's attempt to recall the defendant and impose a greater sentence.

¶39 Additionally, in Gruetzmacher, we emphasized a significant factor in determining that the circuit court acted appropriately in resentencing the defendant was that "the justice system as a whole had not yet begun to act upon the circuit court's sentence." Gruetzmacher, 271 Wis. 2d 585, ¶38. Upon review of the record, we conclude the same holds true in the present case. The circuit court notified the parties it had made a mistake regarding Robinson's original sentence and

21

corrected the sentence one day later, before any judgment of conviction had been entered. In fact, no judgment of conviction was ever produced reflecting the originally-imposed sentence. See Gruetzmacher, 2004 WI 55, ¶38; Burt, 2000 WI App 126, ¶11 (holding "the protections against double jeopardy were not violated when the trial court realized it made an error of speech in pronouncing Burt's sentence and took immediate steps to correct the sentence before the judgment of conviction was entered into the record").

¶40 Robinson raises a number of arguments in an attempt to distinguish the present case from Gruetzmacher and Burt. The essence of Robinson's arguments, however, focuses on the same point: Robinson contends that nothing in the record supports the circuit court's explanation for modifying Robinson's sentence. According to Robinson, the sentence the circuit court originally imposed was lawful and no misunderstanding of fact is evident from the record. Robinson stresses that in the cases on which the State relies, there is clear evidence in the record corroborating the justifications provided by the circuit courts for resentencing. See Burt, 2000 WI App 126, ¶18 (noting the judge's intention to impose consecutive, rather than concurrent, sentences was supported by his notes); Gruetzmacher (noting that the judge's original intention to impose a sentence of 40 months was clear from the transcript of the original sentencing hearing). Here, Robinson argues, no such evidence exists in the record.

22

¶41 This is problematic, Robinson contends, because with nothing in the record to corroborate a judge's explanation for resentencing a defendant after a lawful sentence has been imposed, a judge will be free to deliberate on any previously imposed sentence and sua sponte modify it without any constitutional safeguard available for the defendant.

¶42 Cases that examine double jeopardy claims in the context of sentencing present a difficult balancing act for appellate courts. On the one hand, it is unacceptable for the defendant's sentence to be seen as a work in progress that a circuit court can add to or subtract from at will. This result would clearly conflict with the underlying rationale of the Double Jeopardy Clause; that is, to prevent the State from effectively "mak[ing] repeated attempts to convict an individual for an alleged offense . . . and compelling him to live in a continuing state of anxiety and insecurity." DiFrancesco, 449 U.S. at 127-28 (quoting Green, 355 U.S. 184, 187-88). On the other hand, a circuit court should not be tethered in every instance to a sentence that is based on a mistake of law, mistake of fact, or inconsistent with the court's intent. "The Constitution does not require that sentencing should be a game in which a wrong move by the judge means immunity for the prisoner." DiFrancesco, 449 U.S. at 135 (quoting Bozza v. United States, 330 U.S. 160, 166-67, 67 S. Ct. 645, 91 L. Ed. 818 (1947)).

¶43 Accordingly, we reaffirm today the approach set forth in Jones and adopted by this court in Gruetzmacher as the

23

appropriate framework for determining whether a defendant has a legitimate expectation of finality. In cases such as these, a bright line rule is simply unworkable. As we noted in Gruetzmacher, "the Jones factors must be evaluated in light of the circumstances in each case." Id. at ¶34. Evaluating the extent and legitimacy of a defendant's expectation of finality is a multi-factor inquiry that rests largely on the facts of each individual case.

¶44 Here, Judge Van Grunsven noticed he had misunderstood Robinson's prior criminal record during the original sentencing hearing on the same day it occurred and scheduled a new sentencing hearing for the following day. This was not a case where the circuit court judge decided, after further deliberating on the initial sentence imposed, that a different sentence length was more appropriate. Here, as Judge Van Grunsven explained on the record, he misunderstood Robinson's lengthy criminal record, failed to sentence Robinson in a way that matched his intention, and acted to remedy the error as expeditiously as possible. We hold that the record supports this explanation, considering the complexity of the defendant's prior criminal history as recited on the record, Judge Van Grunsven's lengthy remarks regarding the "despicable" nature of Robinson's conduct and the need to protect the public, and the promptness with which the sentence was rectified.[10]

---

[10] In addition, no Presentence Investigation Report was produced in this case. Judge Van Grunsven therefore had no written explanation of Robinson's previous sentences.

24

¶45 We agree with Robinson's observation that the record shows the State and the circuit court correctly described Robinson's prior criminal record and the structure of Robinson's plea agreement before Robinson was sentenced. The record of the original sentencing hearing is replete with references from the State and the circuit court regarding Robinson's prior criminal record and how the sentences for Counts One, Two, and Three would interact with the Waukesha County sentences she was currently serving.

¶46 We disagree, however, with Robinson's contention that nothing exists in the record of the original sentencing hearing to support the circuit court's explanation for modifying Robinson's sentence. During Robinson's original sentencing hearing on May 10, 2011, Judge Van Grunsven emphasized his concerns regarding Robinson's conduct repeatedly:

> With regard to the gravity of the offense, I will tell you, much of what I read in the complaint is absolutely despicable behavior. Police officers are brought to a scene to help you after a relapse and you start . . . taking swipes at them . . .
>
> Quite frankly, in relation to your character, this Court considers the litany of cases that were dismissed and read-in as part of plea negotiations out in Waukesha and while everyone seems to say that Jacqueline has turned the corner, I think the history and violation of laws of the state give me great cause for concern, despite the fact she's been off of probation she's been revoked and I also see her as a threat to society.
>
> She is continuing to commit crimes, despite the fact she has pending charges, leading to the bail jump charge and other cases and I just, while she indicates

25

that she's now clean and sober and going to take the opportunities seriously, I'm not so certain.

¶47 After observing that Robinson's conduct was "despicable," and noting that he considered her to be a "threat to society," Judge Van Grunsven sentenced Robinson for Counts One, Two, and Three in a manner that provided no additional time of incarceration beyond the amount that had already been imposed for the Waukesha County sentences. In light of Judge Van Grunsven's observations regarding Robinson's conduct, we find the record supports Judge Van Grunsven's explanation for resentencing Robinson after realizing he misunderstood the nature and length of the Waukesha County sentences.

¶48 Robinson argues that, without more in the record corroborating the circuit court's explanation for modifying Robinson's sentence, we should conclude the circuit court modified the sentence in a way that violated Robinson's right against double jeopardy. We disagree for two reasons. First, as we explained above, there is evidence in the record supporting the circuit court's justification for modifying Robinson's sentence. Second, Robinson's argument essentially says that, without clear and convincing evidence in the record corroborating the circuit court's explanation, a reviewing court should presume that the circuit court, after deliberating on the initial sentence imposed, decided a harsher sentence would be more appropriate than the one originally intended and imposed. In light of the great deference we afford sentencing courts, we decline to create such a presumption. See, e.g., Solem v. Helm,

26

463 U.S. 277, 290, 103 S. Ct. 3001, 77 L. Ed. 2d 637 (1983) ("Reviewing courts, of course, should grant substantial deference to the . . . discretion that trial courts possess in sentencing convicted criminals."); State v. Paske, 163 Wis. 2d 52, 70, 471 N.W.2d 55 ("We will review sentencing for abuse of discretion."); 7 Crim. Proc. § 27.5(e)(3d ed.) ("Sentencing decisions in many jurisdictions are subject only to review for abuse of discretion. In some states, sentences are evaluated under an even less exacting 'shock-the-conscience' standard."). We do not, as a matter of course, presume that judges act capriciously without clear evidence supporting their actions. Quite the contrary——taking judges at their word is a fundamental assumption built into our legal system. In the absence of clear evidence to the contrary, we decline to assign improper motive on the part of the circuit court.

¶49 The dissent accuses us of failing to address the reflection doctrine. We agree with the dissent's statement that, in cases concerning a judicial change of a sentence, double jeopardy and reflection are two distinct doctrines. We disagree with the dissent's implicit contention, however, that—— regardless of the arguments advanced by the parties——both doctrines must always be addressed. In its attempt to bring this case within the ambit of the reflection doctrine, the dissent mischaracterizes the issue before this court, the arguments raised by the parties, and the impact of our holding.

¶50 Robinson petitioned this court to review whether her "state and federal constitutional rights against double

27

jeopardy" were violated by the circuit court's actions. We accepted Robinson's petition on this question and today we answer it. Our analysis relies on the double jeopardy arguments advanced by the parties in order to address the double jeopardy issue raised by the defendant. We do not cite or discuss——just as the parties do not cite or discuss——the numerous cases in our reflection doctrine jurisprudence the dissent comprehensively reviews and suggests we are altering or overruling. Simply put, the dissent wishes to discuss the vitality of a body of law that is beyond the scope of the issue raised in the petition for review. "Typically, appellate courts do not take it upon themselves to create and develop arguments on a party's behalf," State v. Brown, No. 2011AP2907-CR, unpublished order, (Feb. 26, 2014) (Bradley, J. dissenting), and we decline to do so here.

## IV. CONCLUSION

¶51 The circuit court, upon discovering its error in imposing the original sentence for Robinson, promptly notified the parties. Robinson was resentenced on the following day. The judgment of conviction for the original sentence had not yet been entered into the record. Under the reasoning of DiFrancesco and the factors set forth in Jones, we hold Robinson did not have a legitimate expectation of finality and the circuit court acted appropriately in resentencing Robinson. Accordingly, we affirm the court of appeals.

*By the Court*.—The decision of the court of appeals is affirmed.

28

¶52 DAVID T. PROSSER, J. *(concurring).* This is a close case that requires some "reflection" upon existing precedent. I join the majority opinion but write separately to provide support for the court's decision.

I

¶53 The dissent relies heavily on the reflection doctrine. To explain the doctrine, the dissent repeatedly cites Scott v. State, 64 Wis. 2d 54, 218 N.W.2d 350 (1974), which is the seminal case on the subject.

¶54 The Scott case deserves close attention, however, because it created a new rule that did not arise naturally from Wisconsin case law. Understanding Scott puts a circuit court's sentencing "mistakes" in a different light.

¶55 Calvin Scott was charged with armed robbery. Scott, 64 Wis. 2d at 56. He was convicted at a jury trial on May 17, 1973, and immediately sentenced to an indeterminate term of not more than five years, which term was to be served consecutive to any previously imposed sentence. Id. On May 18——the following day——the trial court, sua sponte, resentenced Scott, increasing his indeterminate term to not more than seven and one-half years, consecutive to any previously imposed sentence. Id.

¶56 At the initial sentencing, the court relied on the fact that Scott had no criminal record prior to the armed robbery, but the court knew that Scott had been convicted of injury by conduct regardless of life——after the robbery——for shooting and injuring his alleged accomplice. Id. at 57 & n.1. For that offense, Scott had already been sentenced to an

1

indeterminate term of not more than five years. Id. at 57 n.1. Thus, the court's five-year sentence for the armed robbery produced a projected ten years in prison for Scott. Id. at 57.

¶57 At 8:20 a.m. on May 18, the court, sua sponte, ordered a further sentencing hearing for later in the day. Id. At 4:10 p.m. the hearing commenced and the court increased Scott's indeterminate sentence by two and one-half years, bringing his projected time in prison to 12 and one-half years instead of ten. See id. at 57-58.

¶58 The circuit court explained its position:

When I was driving home last night, it became clear to me that I had not accomplished the goal that I set out to do in the sentencing of this matter. . . .

[In sentencing the defendant,] I tried to find some fairness in treating the two people involved in the situation the same. . . . You were already in jail for another matter for five years. The other gentleman received ten years for his offense. . . .

[M]y intent at the time was a sentence of seven and one-half years, because if I sentenced you to seven and one-half years, I was doing two very important things, I thought, but I didn't communicate them to you.

I was giving you less than what Mr. Porter got for the same offense, and there were reasons for that, and those reasons were in your favor . . . . If I gave you just five years, you would be receiving a ten year sentence the same as Mr. Porter. But Mr. Porter was receiving ten years for one offense, and you were serving ten years for two offenses. That was not fair to the community.

So my notes indicated that you should be sentenced to seven and one-half years for this

2

<u>offense, for the March 6, 1969 robbery. And that was my intent yesterday and always has been.</u>

<u>Id.</u> (emphasis added).

¶59 On appeal the <u>Scott</u> court reversed the circuit court with respect to the sentence. <u>Id.</u> at 61-62. It quoted <u>State v. Foellmi</u>, that "[a] trial court should not reduce a sentence on 'reflection' alone or simply because it has thought the matter over and has second thoughts. It must base its modification on 'new factors' brought to its attention." <u>Scott</u>, 64 Wis. 2d at 59 (quoting <u>State v. Foellmi</u>, 57 Wis. 2d 572, 582, 205 N.W.2d 144 (1973)). Then it added:

> Logic dictates that if a court is precluded from reducing a sentence after some later reflection, it should also be precluded from increasing a sentence for the same reasons. It would create a double standard to not allow such a reduction and to permit the increase.
>
> . . . .
>
> A review of the record in the instant case shows that the decision to increase the sentence was based solely on "reflection." Here the court amended the sentence so as to conform the sentence to its unspoken intent. This in our opinion does not constitute a new factor upon which a trial court may increase a defendant's sentence.

<u>Id.</u> at 59-60.

¶60 There are several problems with the <u>Scott</u> opinion.

¶61 First, the court relied on three cases, <u>State v. Leonard</u>, 39 Wis. 2d 461, 159 N.W.2d 577 (1968); <u>Denny v. State</u>, 47 Wis. 2d 541, 178 N.W.2d 38 (1970); and <u>Foellmi</u>, as foundation for its legal conclusions. All three cases are problematic.

¶62 The <u>Scott</u> court quoted <u>Leonard</u> as follows:

3

Hereafter, on resentencing following a second conviction after retrial, or mere resentencing, the trial court shall be barred from imposing an increased sentence unless (1) events occur or come to the sentencing court's attention subsequent to the first imposition of sentence which warrant an increased penalty; and (2) the court affirmatively states its grounds in the record for increasing the sentence.

Scott, 64 Wis. 2d at 58 (quoting Leonard, 39 Wis. 2d at 473).

¶63 Leonard involved a fact situation related to sentencing after a second trial. Leonard, 39 Wis. 2d at 464-65. Had this court's ruling been confined to these facts, it would have been grounded in the sound principle that a defendant should not be punished solely for asserting his rights in a successful appeal. But the court extended the principle to "mere" resentencings because "we see no good reason" to distinguish some resentencings from others. Id. at 465. Thus, the court said, "the trial court shall be barred from imposing an increased sentence unless (1) events occur or come to the sentencing court's attention subsequent to the first imposition of sentence which warrant an increased penalty . . . ." Id. at 473 (emphasis added). This language is arguably ambiguous in its effect on a judicial "mistake" in sentencing. Is a judicial mistake in sentencing an "event"? If a mistake is an "event" and the mistake comes "to the sentencing court's attention subsequent to the first imposition of sentence," the court may increase the sentence. However, if a judicial mistake is not an "event," the formulation makes no provision for correcting a judicial error if the correction would increase a defendant's sentence.

4

¶64 The Scott court then quoted the Denny case as follows: "A trial judge is not free to re-evaluate the first sentence; he is in effect bound by the maximum of the previous sentence unless new factors or newly known factors justify a more severe sentence." Scott, 64 Wis. 2d at 59 (quoting Denny, 47 Wis. 2d at 544).

¶65 Because Denny also involved a sentence imposed after a second trial, the quoted statement was intended to apply in a different context from the situation in Scott.

¶66 The court then quoted the "reflection" sentence from Foellmi, 57 Wis. 2d at 582. Scott, 64 Wis. 2d at 59. Foellmi is a curious decision written by Justice Horace W. Wilkie, who also wrote a concurring opinion. Foellmi, 57 Wis. 2d at 578, 586. The concurring opinion is at odds with the majority opinion. Compare id. at 579, with id. at 586-87 (Wilkie, J., concurring). Chief Justice Harold Hallows also concurred but disagreed with the majority's reasoning. Id. at 583 (Hallows, C.J., concurring). Justice Connor T. Hansen, by contrast, wrote a third concurring opinion, joined by two other justices, pointedly disagreeing with Justice Wilkie's concurrence. Id. at 587 (Hansen, J., concurring).

¶67 At issue in Foellmi was a sentence by a La Crosse County circuit judge who sentenced a defendant to prison after he pled guilty to 16 burglaries. Foellmi, 57 Wis. 2d at 574-75. The judge sentenced Foellmi to eight concurrent sentences of not more than five years on the first eight counts. Id. at 575. He then sentenced the defendant to eight concurrent sentences of

5

not more than five years on the second eight counts, with the sentence for count nine to run consecutively to the sentence for count one.  Id.  Less than two months later, the court ordered that the defendant be returned to La Crosse from the Wisconsin State Reformatory——solely on the court's initiative——to be resentenced.  Id.

¶68  The court explained that its undisclosed intention all along was to impose a "trial run" sentence in which the defendant would be ordered back to court within 90 days of the original sentence, after the defendant had heard "the prison gates clank behind him" and experienced the reality of prison life, e.g., the ultimate example of "Scared Straight."  Id. at 576.  Upon the defendant's return, the court reduced all 16 sentences from five years to three years and stated that counts two through eight would be concurrent with count one, counts ten through 16 would be concurrent with count nine, and count nine would run consecutively with count one.  Id. at 577.  The court then stayed execution of all sentences and placed the defendant on probation.  Id.

¶69  Was this procedure proper?  The divided Foellmi court affirmed the second sentence but adopted rules to prevent "trial run" sentences from happening in the future——at least without legislative authorization.  Id. at 579-81.  The court stated, "It is inappropriate for a sentencing court to make a change in an imposed sentence unless new factors are made known."  Id. at 582.  The court quoted a passage from the Supreme Judicial Court of Massachusetts:

6

> Occasions inevitably will occur where a conscientious judge, after reflection or upon receipt of new probation reports or other information, will feel that he has been too harsh or has failed to give due weight to mitigating factors which properly he should have taken into account. In such cases the interests of justice and sound judicial administration will be served by permitting the trial judge to reduce the sentence within a reasonable time.

Id. (quoting Dist. Attorney for the N. Dist. v. Superior Court, 172 N.E.2d 245, 250 (Mass. 1961)). Then this court rebutted the Massachusetts court: "We think the Massachusetts court goes too far. A trial court should not reduce a sentence on 'reflection' alone or simply because it has thought the matter over and has second thoughts. It must base its modification on 'new factors' brought to its attention." Id.

¶70 No doubt Chief Justice Hallows was miffed by the first sentence because he had cited the Massachusetts decision with approval in a unanimous decision, Hayes v. State, 46 Wis. 2d 93, 102 n.2, 104, 175 N.W.2d 525 (1970), which declared that "a trial court may exercise its inherent power to change and modify its judgments after the execution of the sentence has commenced . . . ." Id. at 101. "We adopt one year from the date of sentencing for the time being as a time limit within which a motion can be made to have the court exercise its inherent power to modify a criminal sentence." Id. at 106.

¶71 The Foellmi decision was this court's full retreat from the Hayes decision, and Scott was the court's effort to treat sentence increases the same as sentence reductions. The court used Scott to make this point, rather than to establish

7

coherent policy, because this court certainly allowed circuit courts to correct "mistakes" when the correction benefited a defendant.

¶72 Examination of Scott and other early cases suggests that this court was reluctant to repudiate judicial authority to modify sentences, but it was apprehensive about permitting trial judges to modify their sentences whenever they had second thoughts about them. Judicial discretion of that nature would seriously undermine finality, creating uncertainty in the system as well as possible unfairness to defendants. As a practical matter, judicial authority to modify sentences had to be cabined. The new factor analysis set out in Rosado v. State, 70 Wis. 2d 280, 288, 234 N.W.2d 69 (1975), complemented the reflection doctrine described in Scott. These cases established parameters for discretionary sentence modification.

¶73 However, changing a sentence after rethinking or second-guessing it on the merits is different from correcting a sentence because of a judicial mistake. The new factor criteria are not suitable for evaluating judicial mistakes. This is one reason why the reflection doctrine does not control this case.

¶74 In addition, the Scott decision was influenced in part by concerns about double jeopardy. This is true, notwithstanding the fact that there was minimal discussion of double jeopardy in the opinion. See Scott, 64 Wis. 2d at 58. The Scott court stated: "Jeopardy in a constitutional sense has not attached and said sentence could be increased." Id. (citations omitted).

8

¶75 Chief Justice Hallows was still a member of the court when Scott was decided. In the Hayes case, Justice Hallows wrote:

> [United States v. Benz, 282 U.S. 304 (1931)] pointed out the so-called lack of power to change a sentence after the commencement thereof was not a question of jurisdiction or the power of the court but the result of the application of the theory that to change a sentence after commencement raised a question of double jeopardy. However, this question can only arise if the sentence is increased; there is no question of double jeopardy where the length of sentence is shortened.

Hayes, 46 Wis. 2d at 101.

¶76 Hayes was cited in State v. North, 91 Wis. 2d 507, 509-10, 283 N.W.2d 457 (Ct. App. 1979), where the court of appeals said:

> Once a criminal defendant begins serving a sentence, a court may, in certain situations, properly modify or correct the sentence. Modification to correct sentencing flaws runs afoul of the double jeopardy provisions when the amending court seeks to increase sentences already being served.
>
> . . . .
>
> [The Wisconsin Supreme Court] has stated that double jeopardy situations arise in modifying sentences when the sentence is enhanced or increased.

Id. (footnotes omitted) (citing Hayes, 46 Wis. 2d at 101).

¶77 The majority opinion here emphasizes United States v. DiFrancesco, 449 U.S. 117 (1980), which was decided ten years after Hayes and one year after North. DiFrancesco "changed the landscape of double jeopardy law." State v. Gruetzmacher, 2004 WI 55, ¶30, 271 Wis. 2d 585, 679 N.W.2d 533. DiFrancesco said:

9

Historically, the pronouncement of sentence has never carried the finality that attaches to an acquittal. . . . [Under English common law, the] trial court's increase of a sentence, so long as it took place during the same term of court, was permitted. This practice was not thought to violate any double jeopardy principle. The common law is important in the present context, for our Double Jeopardy Clause was drafted with the common-law protections in mind.

. . . .

The double jeopardy considerations that bar reprosecution after an acquittal do not prohibit review of a sentence.

. . . .

The Double Jeopardy Clause does not provide the defendant with the right to know at any specific moment in time what the exact limit of his punishment will turn out to be.

DiFrancesco, 449 U.S. at 133-34, 136-37 (citations omitted).

¶78 DiFrancesco disavowed the "dictum" in Benz, 282 U.S. at 307, to the effect that the federal practice of barring an increase in sentence after service of the sentence began was constitutionally barred. DiFrancesco, 449 U.S. at 138. This disavowal removed the foundation for this court's comments in Hayes and the court of appeals decision in North. Indeed, Gruetzmacher withdrew language from North that would have greatly impeded the ability of circuit judges to correct mistakes. Gruetzmacher, 271 Wis. 2d 585, ¶35.

¶79 Gruetzmacher discussed several post-DiFrancesco cases from Wisconsin, State v. Jones, 2002 WI App 208, 257 Wis. 2d 163, 650 N.W.2d 844, State v. Willett, 2000 WI App 212, 238 Wis. 2d 621, 618 N.W.2d 881, and State v. Burt, 2000 WI App

10

126, 237 Wis. 2d 610, 614 N.W.2d 42, which, together, make the Scott case outmoded with respect to quickly-addressed judicial mistakes.

¶80 "The Constitution does not require that sentencing should be a game in which a wrong move by the judge means immunity for the prisoner." Bozza v. United States, 330 U.S. 160, 166-67 (1947). This aphorism was quoted in both DiFrancesco and Gruetzmacher and provides guidance in the review of judicial "mistakes." See DiFrancesco, 449 U.S. at 135; Gruetzmacher, 271 Wis. 2d 585, ¶29.

## II

¶81 Human beings make mistakes. Even judges.

¶82 Sigmund Freud once lectured on "The Psychology of Errors"——"certain phenomena which are very frequent, very familiar and very little heeded, and which have nothing to do with the pathological, inasmuch as they can be observed in every normal person."[1] Freud said:

> I refer to the errors which an individual commits——as for example, errors of speech in which he wishes to say something and uses the wrong word; or those which happen to him in writing, and which he may or may not notice; or the case of misreading, in which one reads in the print or writing something different from what is actually there. A similar phenomenon occurs in those cases of mishearing what is said to one, where there is no question of an organic disturbance of the auditory function. Another series of such occurrences is based on forgetfulness——but on a forgetfulness which is not permanent, but temporary, as for instance

---

[1] Sigmund Freud, A General Introduction to Psychoanalysis 10 (G. Stanley Hall trans., Boni & Liveright, Inc. 1920).

11

when one cannot think of a name which one knows and always recognizes; or when one forgets to carry out a project at the proper time but which one remembers again later, and therefore has only forgotten for a certain interval.

(Emphasis added.)

¶83 One need not buy into Freud's explanation of these phenomena to acknowledge that they exist. For instance, in this case, at the beginning of the sentencing hearing, there was discussion between the court and the defense attorney:

[THE COURT:] State and Mr. Rypel are making a joint recommendation of concurrent time to a sentence she's currently serving in Waukesha County. Is that correct?

MR. RYPEL: Yes.

THE COURT: Matter is here for sentencing. I trust I will be enlightened as to what she's serving in Washington and I will hear from the State.

(Emphasis added.) The reference to Washington County is a classic slip-of-the-tongue, to which no one responded. Did counsel mishear what the court said? Or did counsel disregard what the court said?

¶84 In my view, neither constitutional law nor sound public policy demands that a defendant benefit from an authentic judicial mistake in sentencing. The challenge for an appellate court in reviewing a sentence modification is identifying an authentic mistake that may be corrected from a change of position based on reflection that requires a new factor as a prerequisite to modification.

¶85 In North, the court sentenced a defendant for one count of misdemeanor theft and one count of uttering a forged

12

check, which was a felony. <u>North</u>, 91 Wis. 2d at 508-09. The maximum penalty for misdemeanor theft was six months in the county jail, or a fine of $200, or both. <u>Id.</u> at 509. The maximum penalty for forgery-uttering was ten years in prison or a fine of $5,000, or both. <u>Id.</u> Inexplicably, the court sentenced North to two and one-half years in prison on the theft charge, and six months concurrent on the forgery charge. <u>Id.</u> The court's sentencing objective——two and one-half years in prison——seems clear, but the prison sentence was assigned, mistakenly, to the wrong offense. <u>Id.</u> When the court attempted to correct the "obvious error" several months later, it was reversed. <u>Id.</u> at 511.

¶86 In my view, the circuit court's error in <u>North</u> was indeed "obvious" and the circuit court should have been permitted to correct it.

¶87 However, not all errors are so obvious.

¶88 In <u>Burt</u>, the circuit court sentenced a defendant on three serious felonies: (1) party to a crime of first-degree reckless homicide; (2) party to a crime of attempted armed robbery by the use of force; and (3) party to a crime of armed robbery by threat of force. <u>Burt</u>, 237 Wis. 2d 610, ¶1. In imposing sentence, the circuit court said:

> As to count one [first-degree reckless homicide], Mr. Burt, you're sentenced to the Wisconsin state prison system for a period of forty years.
>
> As to count three, you're sentenced to the Wisconsin state prison system for——Let me correct that.

13

As to count four [attempted armed robbery], you're sentenced to the Wisconsin state prison system for a <u>concurrent</u> term of twenty years.

As to count three [armed robbery], you're sentenced to a term of consecutive probation consecutive to both counts one and four for a term of seven years and a sentence of forty years is imposed and stayed.

<u>Id.</u>, ¶3 (brackets in original).

¶89 Burt was sentenced on the morning of March 6, 1997. <u>Id.</u> Later, the court sentenced Burt's co-defendant, Anthony Sandifer. <u>Id.</u>, ¶4. Sandifer's attorney immediately objected to Sandifer's sentence, asserting that it was much longer than Burt's 40-year sentence. <u>Id.</u> The circuit court responded by calling Burt back to the courtroom for a corrected sentence. The court explained:

I'm going to place my original notes in a sealed envelope in the file for appellate purposes, but my notes are clear, and I did misspeak, and the court is fully aware——very little time having passed in this matter——as to what its original intent was, and quite honestly, based on what the court thought it imposed—— this sentence was somewhat less than the sentence that this defendant was to receive, the court believing that this defendant was a more aggressive actor in the matter, quite candidly.

So I understand whenever there is a change of this kind, it's bound to raise eyebrows and raise concerns, but the court intends to impose the sentence that it had in mind and meant to say at the time of the sentencing . . . .

<u>Id.</u>

¶90 The court then repeated the sentence that it imposed on Burt in the morning, except that it changed the 20-year

14

concurrent sentence for attempted armed robbery to a 20-year consecutive sentence for attempted armed robbery. Id.

¶91 The court of appeals upheld the 20-year increase in Burt's sentence, noting that "the trial court realized it made an error of speech in pronouncing Burt's sentence and took immediate steps to correct the sentence before the judgment of conviction was entered into the record." Id., ¶11. The court's "error" in executing its original intention was substantiated by its "original notes" and its sentence of Sandifer. Would the result have been different if Sandifer had been sentenced the day after Burt was sentenced so that Burt's sentence could not be corrected the same day?

¶92 Misstatements involving consecutive sentences and concurrent sentences may not be uncommon. During the pendency of this case, the court received a petition for review in State v. Maxcey, No. 2012AP1988-CR, unpublished slip op. (Wis. Ct. App. July 30, 2013),[2] a sentencing dispute that included the following colloquy:

> THE COURT: . . . I think, Mr. Maxcey, that I do have to sentence you for four separate crimes and I am going to do that. I am, however, going to make your confinement concurrent to the confinement that you are now serving and you don't get any credit for it. Because you committed these armed robberies without a gun, I am going to sentence you to three years of confinement time on each of the armed robberies, so it should be a total of twelve years of confinement. That would be consecutive to the five years you are

---

[2] This case is being cited solely for the facts and not as precedent or authority.

15

serving but that is a length of time that makes sense to me, given the nature of the crime——

[DEFENSE COUNSEL]: I thought you said it was going to be concurrent.

THE COURT: Did I say consecutive?  Three years consecutive to——this is what I meant to say, I am sentencing [you] on one count with three read-ins; the bottom line number is twelve years because there are four crimes that I am considering here, but it will be concurrent to the sentence he is serving.  Does that explain it?

[DEFENSE COUNSEL]: Yes.

Id. (emphasis added) (brackets in original).

¶93  In both Burt and Maxcey, a circuit court judge misspoke but an attorney alerted the judge to the error and the error was promptly corrected.

¶94  The difficulty in the present case is that it involves an error of "mishearing" rather than the more familiar error of misspeaking.  In addition, the circuit court's position that it "misheard" information about the concurrent sentences in Waukesha County is contradicted by the fact that the court repeated what it heard.  The circumstances of this case were such that no attorney alerted the court to the error because the court did not misspeak.  The parties asked for concurrent sentences, the court imposed concurrent sentences, and the court intended to impose concurrent sentences.  The court seemingly misunderstood the effect of the sentences it imposed because it thought it was imposing sentences concurrent to a 33-month sentence of confinement from Waukesha County.

16

¶95 That misunderstanding is inconsistent with the "two years in and four years out" statement found in the transcript. Thus, if this court were to adopt the position that judicial errors simply may not be corrected if correction produces an increased sentence, it could reverse the circuit court here based solely on its statements at the initial sentencing. Such inflexibility, however, would effectively dispute the authenticity of statements the court made about the defendant during the initial sentencing, statements the court made about its intentions during resentencing, and statements the court made in its written opinion denying a postconviction motion. It would not explain why the court went to CCAP to check out the Waukesha County sentences shortly after its own sentencing. It would place great importance on the fact that Robinson was sentenced in the afternoon, unlike Burt who was sentenced in the morning, so that the court could not modify its sentence the same day. It also would place significance on the fact that no attorney spoke up and rescued the court from a mistake. However, it would place no significance on the fact that the court was dealing with a complicated set of facts, that it had no presentence investigation that put the Waukesha sentences in writing, and that it acted to correct its mistake within 24 hours.

¶96 The confusion related to the sentences is evident from the discussion during the plea hearing on April 12, 2011. The following exchange took place between the court and the Assistant District Attorney (ADA):

17

[ADA]: The State's recommendation is for count two, five months, House of Corrections, that would be concurrent with count three, consecutive to count one. Or count three, five months, House of Corrections, that is concurrent with count two and consecutive to count one. And for count one, six months in the House of Corrections with release to CJRC for treatment, consecutive to count two and three.

THE COURT: I'm sorry. Count one was what?

[ADA]: Count one was six months in the House of Corrections, with release to CJRC for treatment, and that would be consecutive to counts two and three.

THE COURT: So let me see if I get this straight. Count one, six months, House of Corrections, with release to CJRC, consecutive to any other sentence. Count two, five months in the House of Corrections, concurrent to any other sentence. Counts three, five months in the House of Corrections, concurrent to count two but consecutive to count one.

[ADA]: Yes.

. . . .

THE COURT: I'm confused.

. . . .

[ADA] I think the bottom-line is that——for the three counts in this case, [we're] asking for, essentially, 11 months in the House of Corrections——

THE COURT: Well, that doesn't make any sense. You want me to run all counts concurrent with the sentences in 08-CF-518 -- 08-CM -- So while on the one hand you're saying all counts concurrent, you're also saying counts one and counts three to be consecutive.

Why don't you guys take a moment and pass this case. Take a moment to set this out because this is getting extremely confusing. I don't know what you're asking me to sentence . . . .

¶97 Eventually, the ADA told the court that the sentence was to be concurrent with the Waukesha sentences, but she also

18

said, "I'm willing to change the offer to a lengthy House sentence, concurrent to the sentence in the three cases, in which she was just revoked." It is true that the confusion related to the three counts from the Milwaukee County incident, but the plea hearing demonstrates that the judge was having a hard time wrapping his head around which sentences were concurrent and which ones were consecutive. It is understandable that the confusion would linger until the sentencing hearing less than a month later.

¶98 This is a close case, but I come down on the side of the judge. It does not take psychoanalysis to understand that the phenomenon of "mishearing" is different from not hearing. A misunderstanding, when acted upon very quickly, should not prevent a court from correcting a sentence. Such a correction does not violate double jeopardy and is a reasonable result in this case.

¶99 For the reasons stated, I respectfully concur.

¶100 SHIRLEY S. ABRAHAMSON, C.J. *(dissenting).* Wisconsin case law sets forth two separate doctrines governing a judicial change in a sentence: double jeopardy and reflection.[1]

¶101 The majority opinion addresses the defendant's constitutional double jeopardy argument and denies that it addresses the reflection doctrine.[2] The majority opinion admits that constitutional double jeopardy protection and the reflection doctrine both apply in "cases concerning a judicial change of a sentence."[3] Nevertheless, the majority opinion sometimes addresses the act of reflection but avoids the term and refers to reflection as the judge "deliberating," ¶¶41, 44, 48, or similar words. Paragraphs 42 and 43 of the majority opinion openly address the defendant's reflection arguments.

¶102 I examine the application of the reflection doctrine in the present case, in which the circuit court changed the terms of a sentence after the circuit court imposed a valid

---

[1] See, e.g., Scott v. State, 64 Wis. 2d 54, 58, 218 N.W.2d 350 (1974) (overturning a change in a sentence on reflection grounds even when "[j]eopardy in a constitutional sense has not yet attached").

[2] See majority op., ¶50 ("We do not cite or discuss . . . the numerous cases in our reflection doctrine jurisprudence . . . .").

[3] Majority op., ¶49.

1

sentence.[4]  I would vacate the second sentence and reinstate the original sentence.

¶103 I address the reflection doctrine because the reflection doctrine has been raised at every stage of the litigation; because this court typically decides cases on grounds other than constitutional grounds when it can;[5] because the reflection doctrine presents difficulties for litigants and the courts; and because the reflection doctrine is dispositive in the instant case.

¶104 By neglecting the reflection doctrine, the majority opinion ignores an important and, in the present case, dispositive issue and muddles the present law on the reflection doctrine.  Because I conclude that the circuit court overstepped its limited authority under the existing reflection law to change the sentence it imposed, I dissent.

---

[4] The case law variously refers to such a change in an original valid sentence interchangeably as "amending the sentence," Scott, 64 Wis. 2d at 57; "resentencing," State v. Foellmi, 57 Wis. 2d 572, 581, 205 N.W.2d 144 (1973); "a change in an imposed sentence," Foellmi, 57 Wis. 2d at 582; "sentence modification," State v. Hedgwood, 113 Wis. 2d 544, 546, 335 N.W.2d 399 (1983); a "sentence increase," Scott, 64 Wis. 2d at 59; "sentence reduction," State v. Wuensch, 69 Wis. 2d 467, 472, 230 N.W.2d 665 (1975); or a "sentence change," Wuensch, 69 Wis. 2d at 480.  I use the word "change" to include all these terms.  The majority opinion similarly refers to "a judicial change of a sentence."  Majority op., ¶49.

[5] See, e.g., Adams Outdoor Advertising, Ltd. v. City of Madison, 2006 WI 104, ¶91, 294 Wis. 2d 441, 717 N.W.2d 803.

2

¶105 In response to my dissent, the concurrence acknowledges that the reflection doctrine is alive (but not well) in Wisconsin law and is germane to the present case. The concurrence "reflects" on the reflection doctrine "to provide support for the court's decision." Concurrence, ¶52.

¶106 The concurrence does not advocate discarding the reflection doctrine. Instead, the concurrence recasts the doctrine to distinguish between an "authentic mistake that may be corrected" (which the concurrence concludes happened in the instant case) and "a change of position based on reflection that requires a new factor as a prerequisite to modification." Concurrence, ¶84.

¶107 My discussion of the reflection doctrine is organized as follows:

I.    The parties' positions on the recollection doctrine.

II.   An examination of the reflection doctrine and its application to the present case.

III.  The concurrence's position on the reflection doctrine.

IV.   The future prospects of the reflection doctrine.

I

¶108 The reflection doctrine has been presented to this court by both parties and the amicus.[6] The majority opinion asserts that the dissent is "creat[ing] and develop[ing] arguments on a party's behalf."[7] Yet the parties addressed this issue time and again and the reflection issue was fully before this court.

¶109 Both parties addressed the issue of reflection in their briefs in this court. The defendant's brief notes that the increase in the defendant's sentence "was impermissibly based on the court's second guessing of its original sentence."[8] The State's brief defends against the charge of reflection, stating "the sentencing court in this case did not impermissibly modify the sentence 'upon reflection.'"[9]

¶110 The circuit court's order denying the defendant's post-conviction motion was appealed to the court of appeals. Both the judgment of conviction and the post-conviction order are before this court for review. The post-conviction motion

---

[6] The parties spent most of oral argument and their briefs discussing the double jeopardy issue. The short unpublished per curiam opinion of the court of appeals addressed only the double jeopardy issue.

[7] Majority op., ¶50 (quoting State v. Brown, No. 2011AP2907-CR, unpublished order (Feb. 26, 2014) (Bradley, J., dissenting)).

[8] Brief of Defendant-Appellant-Petitioner at 6.

[9] Brief of Plaintiff-Respondent at 16.

4

noted that the modified sentence "is neither permissible nor fair and constitutes double jeopardy and modification of the sentence without a new factor."[10]

¶111 Additionally, a nonparty (amicus) brief of the Wisconsin Association of Criminal Defense Lawyers discussed the "reflection" issue at length.

¶112 At oral argument, the issue of reflection emerged again.  Defense counsel noted:

> I don't believe that there's anything suggesting, or to meet that burden of proof in this record.  I think there are only the comments of the judge on Day Two that make any suggestion of whether or not it was reflection. . . . It does, I think, kind of sound like reassessing and reweighing some of the factors insofar as he misunderstood the nine-month sentence, but I don't believe that any evidence was introduced into the record at that point that would suggest it was not reflection.[11]

¶113 The State in its oral argument before this court stated:  "[R]eflection is a factor that can be considered in addition to the [State v. Jones, 2002 WI App 208, 257 Wis. 2d 163, 650 N.W.2d 844, double jeopardy] factors.  I think you can look what the sentencing, the record, you can look to

---

[10] State v. Robinson, Case No. 11-CF-288, Post-conviction Motion To Restore Original Sentence (Milwaukee Cnty. Cir. Ct., Nov. 14, 2011).

[11] Oral arg. at 24:48-25:28, available at http://www.wicourts.gov/supreme/scoa.jsp?docket_number=2011ap2833&begin_date=&end_date=&party_name=&sortBy=date (last visited June 2, 2014) (emphasis added).  See the defendant's reflection argument, discussed at ¶¶40-41 of the majority opinion.

the time it took for the court to resentence, and you can look to whether the trial court impermissibly reflected."[12] The State continued: "[W]hat you can discuss is, you know, well, the State's argument is that there is no reflection. I do think this court should address that issue, because prior cases in the appellate courts have discussed in the double jeopardy context whether the trial court impermissibly reflected in imposing its sentence, resentence."[13] The State openly recognized that impermissible reflection would bar the circuit court's change in the sentence imposed in the present case.

¶114 The majority opinion erroneously asserts that no arguments regarding the reflection doctrine are before the court. Majority op., ¶¶49-50. The majority opinion declares that it "do[es] not cite or discuss . . . the numerous cases in our reflection doctrine jurisprudence . . . ." Majority op., ¶51. Nevertheless, the very cases the parties and the majority opinion discuss involved the reflection doctrine. See State v. Gruetzmacher, 2004 WI 55, ¶38, 271 Wis. 2d 585, 679 N.W.2d 533 (discussed at majority op., ¶¶33-40); State v. Burt, 2000 WI App 126, ¶¶14-15, 237 Wis. 2d 610, 614 N.W.2d 42 (discussed at majority op., ¶¶28, 35-39). By denying that it is addressing the reflection doctrine, the majority opinion contravenes our goals of finality and fundamental fairness, casts doubt on the continued vitality of the reflection doctrine, and undermines,

---

[12] Oral arg. at 1:00:24-1:00:44.

[13] Oral arg. at 1:01:40-1:01:56.

if not overrules, numerous cases of long standing adopting the reflection doctrine.[14]

II

¶115 I turn now to an explanation of the reflection doctrine and its application to the present case.

¶116 The reflection doctrine is one aspect of the law that a circuit court's inherent power to change a sentence is a "discretionary power that is exercised <u>within defined parameters</u>."[15] The doctrine prevents a circuit court from

---

[14] In addition to the cases cited herein, a long line of cases addresses the question of when it is appropriate for a circuit court to change a valid sentence it has imposed.

See <u>State v. Macemon</u>, 113 Wis. 2d 662, 668, 335 N.W.2d 402 (1983) ("The rule in Wisconsin is that it is inappropriate for a sentencing court to make a change in an imposed sentence unless new factors are made known. 'A trial court should not reduce a sentence on "reflection" alone or simply because it has thought the matter over and has second thoughts. It must base its modification on "new factors" brought to its attention.' <u>State v. Foellmi</u>, 57 Wis. 2d 572, 582, 205 N.W.2d 144 (1973)."); <u>State v. Martin</u>, 121 Wis. 2d 670, 674 n.1, 360 N.W.2d 43 (1985) ("A trial court is not free to modify a sentence solely on reconsideration and reflection and a deliberate change of mind. See <u>Scott v. State</u>, 64 Wis. 2d 54, 58-60, 218 N.W.2d 350 (1974)."); <u>State v. Perry</u>, 136 Wis. 2d 92, 113, 401 N.W.2d 748 (1987) ("In <u>Scott</u>, the court made clear that a court should not increase a sentence on '"reflection" alone.' [<u>Scott</u>, 64 Wis. 2d ] at 59, 218 N.W.2d 350."); <u>State v. Grindemann</u>, 2002 WI App 106, ¶21, 255 Wis. 2d 632, 648 N.W.2d 507 (overturning a circuit court's change in a sentence because "it may not reduce a sentence merely upon 'reflection' or second thoughts. [<u>Wuensch</u>, 69 Wis. 2d at] 480; <u>Scott v. State</u>, 64 Wis. 2d 54, 59, 218 N.W.2d 350 (1974)").

[15] <u>State v. Ninham</u>, 2011 WI 33, ¶88, 333 Wis. 2d 335, 797 N.W.2d 451 (<u>citing</u> <u>State v. Crochiere</u>, 2004 WI 78, ¶12, 273 Wis. 2d 57, 681 N.W.2d 524) (emphasis added)).

changing its imposed sentence "to conform the sentence to its unspoken intent."[16]

¶117 The reflection doctrine can be traced to State v. Foellmi, 57 Wis. 2d 572, 581-82, 205 N.W.2d 144 (1973), which held that a sentencing court may reduce or modify a sentence after its imposition if new factors bearing on the sentence are made known, but a sentencing court should not reduce a sentence "on 'reflection' alone or simply because it has thought the matter over and has second thoughts." Foellmi, 57 Wis. 2d at 582.

¶118 The case law recognizes that a sentencing court may change a valid sentence that it has imposed for a variety of reasons other than reflection. It can, for example, change a valid sentence it has imposed because of a new factor,[17] or for erroneous exercise of discretion based upon its conclusion that

---

[16] Scott, 64 Wis. 2d at 60. See also State v. Crochiere, 2004 WI 78, ¶12, 273 Wis. 2d 57, 681 N.W.2d 524.

Whether a circuit court has changed a sentence it has imposed on reflection is a question of law for this court.

For a discussion of sentence modification and the reflection doctrine, see Jeffrey Kassel, Comment, Sentence Modification by Wisconsin Trial Courts, 1985 Wis. L. Rev. 195, 200-03.

[17] See Rosado v. State, 70 Wis. 2d 280, 234 N.W.2d 69 (1975).

8

the sentence was unduly harsh or unconscionable,[18] or because it is impossible to carry out the original sentence,[19] or to correct formal or clerical errors.[20]

¶119 In addition, a circuit court can change a valid, imposed sentence to comport with the circuit court's initial intention, when the circuit court's initial intention appears on the record of the original proceedings.[21]

¶120 This court has carefully explained that evidence of the circuit court's original intention must be in the record of the original proceedings if a circuit court is to change a sentence to conform to its original intention. Such a rule enables an appellate court to avoid inquiring into the authenticity of a circuit court's assertion at a second sentencing proceeding of its intention at the original proceedings. As this court explained: "Were we clairvoyant and able to say for certain in every case what the trial judge

---

[18] Wuensch, 69 Wis. 2d at 478-80 ("The trial court cannot change the sentence upon mere reflection or indulge in 'shock treatment.' However, we perceive no valid reason why a trial court should not be permitted to review a sentence for abuse of discretion based upon its conclusion the sentence was unduly harsh or unconscionable."); see also State v. Harbor, 2011 WI 28, ¶35 n.8, 333 Wis. 2d 53, 797 N.W.2d 828 (citing Wuensch for the same proposition).

[19] State v. Sepulveda, 119 Wis. 2d 546, 555-56, 350 N.W.2d 96 (1984)

[20] Hayes v. State, 46 Wis. 2d 93, 101-01, 175 N.W.2d 625 (1970) (overruled in part by State v. Taylor, 60 Wis. 2d 506, 210 N.W.2d 873 (1973)).

[21] Scott, 64 Wis. 2d at 59-60.

really 'intended,' this [court might investigate the trial judge's intentions]. Being mere mortals however, we must refrain from such delicate undertakings, and we refuse to sanction a procedure that encourages such an inquiry."[22]

¶121 Along these lines, the majority opinion urges that "taking judges at their word is a fundamental assumption built into our legal system," and that in "the absence of clear evidence to the contrary, we decline to assign improper motive on the part of the circuit court." Majority op., ¶48. The reflection doctrine accomplishes exactly the goal the majority opinion espouses.

¶122 Under the reflection doctrine, an appellate court does not gauge whether a circuit court's explanation at resentencing is an accurate statement of the circuit court's original intention.

¶123 The paradigmatic application of the reflection doctrine and the requirement of contemporaneous evidence in the record to support the circuit court's original intention is found in Scott v. State, 64 Wis. 2d 54, 60, 218 N.W.2d 350 (1974), one of the seminal reflection cases.[23]

¶124 In Scott, two defendants were charged with armed robbery. The first defendant, Calvin Scott, was sentenced to up to five years in prison. The second defendant, James Porter,

---

[22] Id. at 59 (citations and quotations omitted).

[23] Scott was not a double jeopardy case. Scott, 64 Wis. 2d at 58.

was sentenced to up to ten years in prison. Scott, however, was already serving a five-year prison sentence for another crime. Thus, defendant Scott was sentenced to a total of ten years of prison for two crimes while defendant Porter was sentenced to ten years but for only one crime.

¶125 The sentencing court realized this difference in the two sentences while driving home after sentencing the defendants. The next day, the sentencing court ordered defendant Scott back to court to be resentenced. At the hearing to change the sentence, the circuit court explaining that it did not intend to have one defendant serve ten years for a single crime and have another serve ten years for two crimes; such a result, said the circuit court at resentencing, "was not fair to the community." Scott, 64 Wis. 2d at 58.

¶126 In Scott, the supreme court reinstated the original sentence, concluding that when a sentencing court unintentionally erred in imposing a sentence, an appellate court would not engage in the delicate inquiry of examining the original intention of the sentencing court. Rather, the Scott court concluded that because the sentencing court's decision to increase the sentence attempted to conform the sentence to its unspoken intention, the increase in the sentence was based on reflection and was prohibited.

¶127 The Scott court explained:

A review of the record in the instant case shows that the decision to increase the sentence was based solely on "reflection." Here the court amended the sentence so as to conform the sentence to its unspoken intent.

11

> . . . [T]he trial court's amended sentence . . . must be reversed and the original sentence . . . re-instated.

Scott, 64 Wis. 2d at 59-60.

¶128 Numerous cases have reiterated and applied the Scott holding: A court cannot change a sentence to conform to its original intention, unless the record demonstrates that original intention.[24]

¶129 When the record demonstrates that a changed sentence conforms to the circuit court's original intention, no impermissible reflection has occurred. For example, in State v. Burt, 2000 WI App 126, 237 Wis. 2d 610, 614 N.W.2d 42, the circuit court's notes from the first sentencing proceeding demonstrated the original intention for the duration of the sentence and that the circuit court judge had a "slip of the tongue"[25]——that is, that the circuit court meant to say one word at the original sentencing proceeding and said another word instead. The change in the sentence was therefore upheld under the Scott test. Burt, 237 Wis. 2d 610, ¶15.

¶130 By contrast, the record in the instant case fails to demonstrate that the court's initial intention was the longer sentence. Indeed, the circuit court in the present case apparently acknowledged that its original intention was not in

---

[24] See, e.g., Harbor, 333 Wis. 2d 53, ¶35; State v. Kluck, 210 Wis. 2d 1, 6-7, 563 N.W.2d 468 (1997); Wuensch, 69 Wis. 2d at 480.

[25] State v. Burt, 2000 WI App 126, ¶12, 237 Wis. 2d 610, 614 N.W.2d 42.

12

the record, explaining that it was changing the sentence to conform the sentence to its unspoken intention that a longer sentence be imposed:

> Yesterday afternoon we had a sentencing hearing involving [the defendant]. At the conclusion of the hearing and subsequent thereto the [circuit court] did some research and I realized I made a mistake. The split sentence I proposed yesterday did not reflect this Court's intent as far as a fair sentence in this case.

¶131 The circuit court in the present case changed the initial sentence when, after thinking the sentence over and doing some research, it decided that the original sentence did not conform with its unspoken, unstated intention. The circuit court stated it came to realize that the sentence imposed was not harsh enough.

¶132 Put differently, the circuit court in the present case came to the conclusion that the original sentence would have to be increased in order to meet its intended but unstated sentencing goals.[26] That reasoning is exactly the kind of reasoning prohibited by the reflection doctrine.

III

¶133 The concurrence critiques three aspects of the reflection doctrine:

> (A) The initial reflection cases relied on cases with different facts. Concurrence, ¶¶60-74.

---

[26] See Burt, 237 Wis. 2d 610, ¶15.

13

(B) Double jeopardy "make[s] the Scott case outmoded with respect to quickly-addressed judicial mistakes." Concurrence, ¶79.

(C) The concurrence changes the reflection doctrine to rely on what the concurrence characterizes as psychoanalysis and mind-reading to determine a circuit court's unspoken intention. Concurrence, ¶98.

A

¶134 With respect to the concurrence's first critique, the Scott court explicitly stated that it was adopting the reflection doctrine by relying on the rationale of past cases with different fact scenarios.[27] The Scott court knew what it was doing. Regardless of the concurrence's hindsight view of the persuasiveness of the seminal cases, see concurrence, ¶¶66-70, or its analysis of the motivations and positions of individual justices, the concurrence recognizes that the holdings of Scott and Foellmi are good law in Wisconsin: A circuit court is barred from "amend[ing] the sentence so as to conform the sentence to its unspoken intent." Scott, 64 Wis. 2d at 59-60.

B

¶135 With respect to the concurrence's double jeopardy argument, nowhere in our case law has it been suggested that the

---

[27] Scott, 64 Wis. 2d at 58-59 (citing State v. Leonard, 39 Wis. 2d 461, 473, 159 N.W.2d 577 (1968); Denny v. State, 47 Wis. 2d 541, 544, 178 N.W.2d 38 (1970); Foellmi, 57 Wis. 2d at 582).

14

application of double jeopardy principles abrogates the need for the reflection doctrine. Indeed, the concurrence implicitly concedes that even if the double jeopardy case of United States v. DiFrancesco, 449 U.S. 117, 133-37 (1980), limits the application of the reflection doctrine, the reflection doctrine retains importance whenever a circuit court changes a valid, imposed sentence. Concurrence, ¶84.

¶136 The concurrence cites Burt, 137 Wis. 2d 610, ¶¶12-15, to show the limits of the reflection doctrine,[28] but Burt demonstrates that courts analyze both the double jeopardy and reflection doctrines and apply each test independently.

C

¶137 With respect to the concurrence's application of the reflection doctrine to the present case, the concurrence modifies the reflection test to uphold the circuit court's sentence in the instant case as follows: A sentence changed because of an "authentic judicial mistake in sentencing" is permissible, even though the record of the initial proceedings does not demonstrate the circuit court's original intention. Concurrence, ¶84.

¶138 The concurrence justifies its modified reflection test to eliminate the record requirement, but at the same time seeks to avoid the use of psychoanalysis and mind-reading to "dispute the authenticity of . . . statements the court made about its intentions . . . ." Concurrence, ¶95.

---

[28] Concurrence, ¶¶88-91.

15

¶139 Yet the concurrence's modification of the reflection doctrine forces an appellate court in the trap of psychoanalyzing and reading the mind of the circuit court.

¶140 The concurrence has constructed a long, involved narrative engaging in mind-reading to determine the circuit court's original intention in the present case and to conclude that the circuit court made an authentic judicial mistake.

¶141 According to the concurrence, "the [circuit] court seemingly misunderstood the effect of the sentences it imposed," concurrence, ¶94; was in "confusion" during the original sentencing proceeding, concurrence, ¶¶96, 97; and had "a hard time wrapping [its] head around" which sentences were concurrent and which were consecutive. Concurrence, ¶97.

¶142 Despite the circuit court's hearing and correctly repeating the defendant's various sentences at the original sentencing proceeding, concurrence, ¶94, the concurrence gamely attempts to read the circuit court's mind to find evidence of confusion at the original sentencing hearing regarding what the circuit court "thought it was imposing." Concurrence, ¶94.

¶143 This is exactly the type of psychoanalysis that the concurrence expressly claims to avoid. Concurrence, ¶98. The concurrence puts appellate courts in the position of having to assess whether a circuit court's post-sentencing assertion of a mistake at the original sentencing is "authentic" or not.

¶144 In contrast, the existing reflection doctrine allows an appellate court to avoid psychoanalyzing the authenticity of the circuit court's assertion at a second sentencing of a

16

mistake at the original sentencing by requiring that the change in the sentence conform with the circuit court's original intention as expressed in the record of the original proceedings.

¶145 As the court noted in Scott, appellate courts are not mind-readers and must rely on the record to assess the circuit court's original intention.[29] The record must contain clear and convincing evidence that the reason for the change in the sentence is not mere reflection. In Burt, the circuit court's contemporaneous sealed notes demonstrated the court's original intention.[30] In the present case, as in Scott, the sentencing court based the change of the sentence on its unspoken intention at the original sentencing proceedings and fails to pass the reflection test.[31]

¶146 Consequently, I conclude that the circuit court erred in the present case in changing the sentence.

IV

¶147 Many states impose far stricter limitations on trial courts' sentence changes than Wisconsin. These states do not

---

[29] Scott, 64 Wis. 2d at 59-60. See ¶120, supra.

[30] Burt, 237 Wis. 2d at 610, ¶4.

[31] Scott, 64 Wis. 2d at 59 (vacating a defendant's new sentence and reinstating the original sentence when the only evidence of the circuit court's original intention came from the court's own statement at the resentencing hearing).

need or have a reflection doctrine to limit a trial court's authority to change a sentence.[32]

¶148 This court has grappled with the circumstances under which a circuit court may change a valid sentence after it is imposed. The appellate courts have decided numerous cases involving sentence changes.[33] The legislature has also addressed this issue in crafting statutes regarding sentence changes.[34]

¶149 If the court wishes to overrule or modify the reflection doctrine, it should do so, rather than create a

---

[32] At the time the reflection doctrine was adopted, Wisconsin was the only state that permitted circuit courts to modify a sentence after the sentence had begun or the term had ended. See Kassel, supra note 16, at 200-03. Attorney Kassel notes:

> Prior to 1970, Wisconsin followed the common-law majority rule that the power of the trial court to modify its judgment or sentence ceases when the sentence has begun or the term of the court has expired. This long-standing limitation on the power of the trial court was rejected by the Wisconsin Supreme Court in Hayes v. State [46 Wis. 2d 93, 175 N.W.2d 625 (1970)].

Id. at 200.

The general rule in other states more strictly prevents trial courts from changing a sentence. See Lee R. Russ, Power of State Court, During Same Term, To Increase Severity of Lawful Sentence—Modern Status, 26 A.L.R. 4th 905, §§ 3, 8 (1983 & Supp. 2013).

[33] See Harbor, 333 Wis. 2d 53, ¶¶35-51 (analyzing our court's history of "new factor" analysis).

[34] See Hayes, 46 Wis. 2d at 106 (holding that the new criminal code mandated a 90-day window for sentence changes).

18

confusing and contradictory outcome as it does in the present case.

¶150 The court might conclude that the reflection doctrine is not good policy, or that it is too difficult to apply, and that the doctrine should be abandoned.

¶151 Or the court could create a bright-line rule, holding that a circuit court, on its own motion or on motion of a party, may change a valid, imposed sentence within a fixed amount of time after the imposition——say, 48 hours.[35]

¶152 If, however, the court is overruling or altering the numerous cases adopting and applying the reflection doctrine, it

---

[35] In areas of imprecise durational requirements, courts occasionally set bright-line time limits in the interests of certainty. The United States Supreme Court recently confronted the issue in Maryland v. Shatzer, 559 U.S. 98, 130 S. Ct. 1213 (2010), when dealing with the time limit after an invocation of counsel that police can recommence interrogation:

> It is impractical to leave the answer to that question for clarification in future case-by-case adjudication; law enforcement officers need to know, with certainty and beforehand, when renewed interrogation is lawful. And while it is certainly unusual for this Court to set forth precise time limits governing police action, it is not unheard-of. In County of Riverside v. McLaughlin, 500 U.S. 44, 111 S. Ct. 1661, 114 L. Ed. 2d 49 (1991), we specified 48 hours as the time within which the police must comply with the requirement of Gerstein v. Pugh, 420 U.S. 103, 95 S. Ct. 854, 43 L. Ed. 2d 54 (1975), that a person arrested without a warrant be brought before a magistrate to establish probable cause for continued detention.

Shatzer, 559 U.S. at 110. The Court in Shatzer settled on a 14-day time period, after weighing and balancing various factors.

19

should state its intention. Instead, the majority opinion muddles the existing doctrine, while claiming not to address it.

¶153 For the reasons set forth, I dissent. I would hold that the record of the proceedings in the present case does not demonstrate that the circuit court increased the imposed sentence to conform to the circuit court's original intention. Rather, the record shows the circuit court reflected on the sentence initially imposed: it checked records; it did research; and it changed the sentence because it concluded that the sentence it imposed was not the one it intended to impose or should have imposed.

¶154 Indeed the concurrence in effect concedes that the record is not sufficient to permit a sentence change under existing law and must modify the reflection doctrine to uphold the changed sentence in the present case.

¶155 Adhering to the current law on reflection, I would vacate the second sentence and reinstate the original sentence.

¶156 I am authorized to state that Justice ANN WALSH BRADLEY joins this opinion.